THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HAROLD MINOR MITCHELL, Appellant.— Appeal by defendant from a judgment of the County Court, Rockland County, rendered September 25, 1967, convicting him of grand larceny in the first degree, upon his plea of guilty, and imposing sen-

tence. Also reviewed herewith is so much of an order of said court entered February 10, 1967 as, on reargument, adhered to a previous determination denying defendant's motion to suppress certain evidence after a hearing (Code Crim. Pro., § 813-c). Order, insofar as reviewed, and judgment reversed, on the law and the facts; motion to suppress granted; and action remitted to the County Court for such action as may be warranted. After defendant's motion, pursuant to section 813-c of the Code of Criminal Procedure, to suppress the use of a safe and its contents as evidence against him had been denied and again denied on reargument, he pleaded guilty to the crime of grand larceny in the first degree and was sentenced to Sing Sing Prison for an indeterminate term. He then appealed to this court and Judge Silberman of the County Court issued a certificate of reasonable doubt. Defendant was charged with having burglarized, on August 23, 1966, a building known as the White Birches Inn and having stolen therefrom a safe containing about $3,600 in cash. The safe and money were recovered by the police on September 1, 1966. The items were found buried in a hole in the ground on defendant's property. The search for the safe and its seizure were made pursuant to a search warrant obtained by the police from a Justice of the Peace. A hearing as to the validity of the issuance of the search warrant was held. At the hearing the detective-sergeant in direct supervision of the Detective Bureau of the Town of Clarkstown testified that he returned from his vacation on August 29, 1966 and upon reviewing the files became aware of the burglary. On August 31 he received a telephone call from a person who told him that the safe that had been stolen from the White Birches Inn was buried in the hole next to defendant's house. The following day he drew up an application for a search warrant and brought it before a Justice of the Peace at police headquarters. He had with him at the time a group of papers stapled together, which constituted the police report or complaints as gathered by his detectives. It is not clear whether the Justice of the Peace ever looked at the reports. After a period of a half hour the witness swore to the affidavit and the Justice of the Peace issued the search warrant. No record was made of anything that transpired between the detective and the Justice of the Peace. The Justice of the Peace testified that he spoke to the detective relative to the affidavit he had submitted and asked him if it were not possible to get an affidavit from the informer and he, the detective, said "no", that he did not want to disclose the name of the informer. At the conclusion he asked the detective to swear to the affidavit and to the truthfulness of the statements and answers he had given in response to the questions he had asked him during the oral examination and the detective swore to the veracity of all the elements. There was no record kept and no record at all of the conversation that occurred between him and the detective-sergeant was made. A special investigator in the District Attorney's office testified that he was the informer who called the detective-sergeant and told the latter about the location of the safe. He had secured the information from a third person who he felt was reliable but whose name he did not disclose. The County Court Judge held that the affidavit clearly " does not establish the probable cause required by our constitution and statutes," stating: " It does not state facts. It does not even state hearsay. It does not set forth the source or credibility of even the limited information contained therein. It states merely conclusions." The only other paper that was present at the time that the warrant was issued — and there is no testimony that the Justice of the Peace ever looked at it — was the complaint report. That leaves nothing upon which to justify the issuance of the warrant except the above-described affidavit. Clearly, this is not enough. There must be a reversal. There has been no compliance with section 795 of the Code of Criminal Pro-

cedure. In *People* v. *Schnitzler* (18 N Y 2d 457, 461), the court said, "reasonable cause may be provided by communications from an informer so long as that information is substantiated either by that informer's character and reputation or by separate objective checking of the informer's tale." In the generally accepted use of the word in search and seizure cases, the informant is the one who was witness to a crime, one who was an accomplice to a crime or one who actually observed the fruits or instrumentalities of a crime in the possession of the accused. The special investigator filled none of these categories and since his informant remains unknown any information about him or her cannot be ascertained. Nor can there be any checking of the special investigator or his informer's tale. In *Schnitzler* (*supra,* p. 461), the court pointed out the procedure to be followed when additional information is sought and secured: "Section 794 of the Code of Criminal Procedure authorizes the Judge, before issuing a warrant, to examine on oath the person seeking the warrant. When the Judge is not 'satisfied of the existence of sufficient grounds for granting the application' (Code Crim. Pro., § 796) and obtains additional proof from the applicant under section 794, the Judge should see to it that such additional information is recorded by the redrafting of the affidavit or by setting out such additional information in the Judge's own minutes or his clerk's minutes or by a stenographic record." Since the detective-sergeant did not know the unnamed informer, he could not of his own knowledge substantiate the unknown informer's reliability or the reliability of the latter's information, since he, himself, had no knowledge thereof. Rabin, Acting P. J., Hopkins, Munder and Martuscello, JJ., concur; Benjamin, J., dissents and votes to affirm the judgment, with the following memorandum: The affidavit supporting the search warrant was signed by Sergeant Finlay. *Inter alia,* it stated that he had information "based on reliable information" and police investigations that the stolen safe was buried on defendant's property. At the suppression hearing, Sergeant Finlay testified that he had received information about the location of the stolen safe from Ray Lindemann, a special investigator for the District Attorney's office; that the Judge asked him numerous questions before the search warrant was issued; that when he answered those questions he referred to a lengthy report containing much other circumstantial evidence linking defendant to the burglary; and that he did not disclose Lindemann's name to the Judge who issued the warrant. Lindemann testified that he had received the information about the location of the stolen safe from a good friend; that he had obtained information about crimes from that friend on about four prior occasions and it had proved reliable; and that his friend was reliable and he [Lindemann] had the utmost confidence in information received from him. The Judge who issued the warrant testified that he discussed the matter with Sergeant Finlay and questioned him for about a half hour before he signed the search warrant; that Finlay told him he had previously used his informer and had found him reliable; that before he issued the warrant he had Finlay swear to the truth of his affidavit and the oral answers he had given during the oral examination by the Judge; and that he did not record the oral questioning of Finlay and was testifying at the suppression hearing from his independent recollection. In my opinion, this record establishes sufficient probable cause for the issuance of the search warrant. The possession of information by one member of a police department is deemed the collective possession of that information by the other members of the department (cf. *People* v. *Montague,* 19 N Y 2d 121, 122–123) and the other officers have the right to rely on such information when they receive it from the one who has personal knowledge of it. Analogously, the information

possessed by Lindemann (an investigator for the District Attorney), as to the reliability of his informer, should be deemed information in the collective possession of the police department; and Sergeant Finlay consequently had the right to rely on Lindemann's information and to swear that it came from a reliable informer. And this, buttressed by Lindemann's own testimony as to the reliability of his informer, is surely sufficient to show probable cause for the issuance of the search warrant. Nor is reversal required merely because the Judge did not record his oral questioning of Finlay and the substance of those questions and answers was not made a matter of record until the suppression hearing. The statement in *People* v. *Schnitzler* (18 N Y 2d 457, 461) that such additional information should be recorded in some acceptable manner would appear to be merely a precatory instruction in the interests of orderly procedure, rather than a substantive ruling that nonrecordation is a fatal defect, since in *Schnitzler* itself the court held the warrant and search valid and affirmed the judgment of conviction even though (as in the present case) the officer's statement as to the informer's reliability was not contained in his affidavit but instead was given orally to the Judge and was not made a matter of record until testimony was taken at a subsequent habeas corpus hearing.