Scileppi, J.
On May 1, 1964 a search warrant authorizing a search of the person and the Queens County residence of the defendant was issued, based upon a supporting affidavit sworn to by Detective James Mugan. Armed with the warrant, Detective Mugan and two other detectives took the defendant into custody in Manhattan, near his place of business. They frisked him but did not then open the attache case that he was *132 carrying. The detectives informed the defendant that they had the warrant and that with or without him they were going to proceed to Queens County to execute it. He apparently chose to accompany them. Just before entering the house, the detectives opened the attaché case and discovered a loaded gun and a large quantity of airline tickets. The search of the house resulted in the seizure of another loaded gun, a pair of brass knuckles and a blackjack.
After the search was concluded, the officers asked the defendant about the items found in the attaché case and in the house, and he admitted ownership of the gun, brass knuckles and blackjack. According to the record, defendant made no statement until the weapons had been found.
Based upon the evidence seized, defendant was indicted and charged with several counts of illegal possession of weapons as well as forgery in the second degree.
Prior to trial, defendant moved to suppress the physical evidence on the grounds that there was no probable cause established for the issuance of the warrant and that the warrant was void on its face for failure to particularly describe the property to be searched for and seized. After a hearing the Supreme Court, Queens County (Shapiro, J.), in an elaborate opinion, held that the airline tickets should be suppressed, because they were not mentioned in the search warrant or supporting affidavit, but that the other evidence seized from the house — the gun, blackjack and brass knuckles — was sufficiently described in the supporting affidavit and thus could be seized (45 Misc 2d 7).
Since the airline tickets were suppressed, the counts of the indictment relating to forgery and criminally receiving and withholding stolen property were dismissed.
On March 11, 1965 a hearing was held before the Supreme Court, Queens County (Bosch, J.), on defendant’s motion to suppress certain statements. Defendant argued that the search warrant was invalid and that any admissions obtained as a result of the execution of that warrant were tainted and must be suppressed. He further argued he was not advised of his right to counsel after his arrest. The court held that it was bound by Judge Shapiro’s ruling as to the validity of the war *133 rant and that the admissions were not the result of any coercion, inducement or force.
Thereafter, defendant pleaded guilty to attempted violation of section 1897 of the former Penal Law as a misdemeanor in satisfaction of all the counts in the indictment. He was sentenced to six months’ imprisonment, execution of sentence suspended.
The Appellate Division, Second Department, unanimously affirmed without opinion and defendant appeals to this court pursuant to permission granted by an Associate Judge.
It seems clear, without going further, that the affidavit in support of the warrant was insufficient to establish probable cause.
The affidavit, sworn by Detective Mugan, recited in pertinent part: “ 2. I have information based upon confidential information, from a previously reliable informant, that John Hendricks has concealed on his person and in his residence at 97-20 72nd Drive, Forest Hills, Hew York a revolver for which he has no Pistol Permit and a quantity of jewelry and other property which are the proceeds of larcenies and burglaries in the Hew York area.”
It is well settled that a police officer or other affiant may, in an affidavit in support of a warrant, rely upon hearsay information obtained from an informer rather than upon his own personal observation (see, e.g., Jones v. United States, 362 U. S. 257, 270). In such case, however, the affidavit must meet the two pronged test laid down in Aguilar v. Texas (378 U. S. 108) and most recently reaffirmed in Spinelli v. United States (393 U. S. 410). In short that test requires that the affidavit show (1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question.
The first prong of the test can be met by the affiant’s statement ‘ ‘ that the informant is known to him and has in the past furnished information leading to the arrest and conviction of others” (People v. Montague, 19 N Y 2d 121, 122; People v. Rogers, 15 N Y 2d 422, 424) or by a separate objective checking *134 of the informant’s tale (People v. Cerrato, 24 N Y 2d 1; People v. Coffey, 12 N Y 2d 443, 452, cert. den. 376 U. S. 916; see, also, People v. MalinsJcy, 15 N Y 2d 86, 91; Beck v. Ohio, 379 U. S. 89). Clearly in the instant case the first prong of the test was adequately met, when Detective Mugan stated in the affidavit that ‘ ‘ Informant has previously furnished me with confidential information- which resulted in the arrest and conviction of three persons for Burglary on April 14, 1963. Case #2387 of 34 Squad. And the arrest of two persons on March 27, 1964 for violation of 1308 Penal Law ($23,550 of American Express Money Orders). Case #1634 of 61 Squad.”
Indeed, defendant concedes the reliability of the informant but contends that the affidavit is insufficient in that it fails to set forth the underlying circumstances from which the informant concluded that a crime had been committed and that the property was where he said it was. In other words there is nothing in the affidavit to establish a basis for the reliability of the information as distinguished from the reliability of the informant. There must be more than an ultimate conclusion of probable cause or the affiant’s mere assertion that the information received was reliable. ■ The reliability of the information may be based on independent observations made by the police officer (see People v. Cerrato, supra; People v. Schnitzler, 18 N Y 2d 457; People v. Rogers, supra; People v. Malinsky, supra; People v. Coffey, supra). It may also be found where the information is so detailed that it is set apart from the category of rumor (Spinelli v. United States, supra; People v. Schnitzler, supra; cf. Draper v. United States, 358 U. S. 307), or it is clear the informant was speaking from firsthand knowledge (People v. Munger, 24 N Y 2d 445). None of these elements, however, is present in the instant case.
In Aguilar the affidavit stated: “ ‘ Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the layr.’ ” (Aguilar v. Texas, supra, at p. 109.)
In holding that this affidavit was insufficient to establish probable cause, the Supreme,Court said:
*135 “ Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his ‘ neutral and detached ’ function and not serve merely as a rubber stamp for the police.
* * *
“Here the 'mere conclusion ’ that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only' contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein, ’ it does not even contain an ‘ affirmative allegation ’ that the. affiant’s unidentified source ‘ spoke with personal knowledge. ’ For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner’s possession[4] The magistrate here certainly could not ‘ judge for himself the persuasiveness of the facts relied on ... to show probable cause. ’ He necessarily accepted ‘ without question ’ the informant’s ‘ suspicion,’ 'belief ’ or ‘ mere conclusion.’” (Aguilar v. Texas, supra, at pp. Ill, 113-114; emphasis added.)
The criticism of the Aguilar affidavit is equally applicable to the instant affidavit.
In Spinelli (supra) the affidavit stated, inter alia, that the F. B. I. had “ been informed by a confidential reliable informant ” that petitioner was “ operating a handbook and accepting wagers and disseminating wagering information by means of the telephones ” which had been assigned the specified numbers.
The Supreme Court held that the informant’s tip was insufficient under the standards of Aguilar since the affidavit contained no support for the affiant’s conclusion that his informant *136 was reliable. Nor did the affidavit contain a sufficient statement of the underlying circumstances from which the informer concluded that a crime had been committed.
The court noted that: “ In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused’s criminal activity in sufficient detail so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual’s general reputation.” (Spinelli v. United States, supra, at p. 416).
Where the detail is sufficient, the Magistrate could reasonably infer that the informant had gained his information in a reliable way (see, e.g. Draper v. United States, supra) but in the instant case such inference cannot be drawn because no detail is provided. All we have here is the informant’s assertion that the defendant has concealed on his person and in his residence certain contraband and stolen property.
The People argue, however, that this language is sufficient because it can be presumed, when the language is given its ordinary meaning, that the informant saw the pistol alleged to be in defendant’s possession.
We cannot agree. The factual assertion by the informant in this case is no different from the informant’s assertion in Aguilar that narcotics are being kept at the described premises. And neither does it differ from the informant’s assertion in Spinelli ‘ that William Spinelli is operating a handbook and accepting wagers ” (Spinelli v. United States, supra, at p. 414). The case most directly in point, however, is Giordenello v. United States (357 U. S. 480). There Agent Finley of the Narcotics Bureau obtained a search warrant based upon an affidavit in which he stated: “ That on or about January 26, 1956, at Houston, Texas in the Southern District of Texas, Veto Giordenello did receive, conceal, etc., narcotic drugs, to wit: heroine hydrochloride with knowledge of unlawful importation ” (Giordenello v. United States, supra, at p. 481). In holding that the arrest and seizure pursuant to the warrant were illegal, the Supreme Court said: ‘ ‘ The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the ‘ probable cause ’ required to *137 support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant’s mere conclusion that the person whose arrest, is sought has committed a crime. * * * The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant’s belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made. We think these deficiencies could not he cured hy the Commissioner’s reliance upon a presumption that the complaint was made on the personal knowledge of the complaining officer.” (Giordenello v. United States, supra, at p. 486; emphasis added.)
It seems clear to us that, if it was impermissible in Giordenello to presume that the affiant, a Federal narcotics agent, was speaking from personal observation, it would likewise be impermissible in this case to presume that the hearsay informant had gained his knowledge firsthand.
While courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner (United States v. Ventresca, 380 U. S. 102), the law is nevertheless clear that the Magistrate must be informed of some of the underlying circumstances which support the conclusion and belief of the affiant that his informer was credible and his information reliable. In short under both the Federal cases and our own State cases, this affidavit fails to pass constitutional muster.
The People argue that, if the affidavit is held to be insufficient, there should not be an outright reversal but rather we should remand the case for a further hearing to enable the People to establish whether the informer’s information was based on his personal observation.
It is true that on several occasions we have ordered further hearings in other probable cause situations (see, e.g., People v. Munger, 24 N Y 2d 445, supra; People v. Verrecchio, 23 N Y 2d 489; People v. Morhouse, 21 N Y 2d 66; People v. Horowitz, 21 N Y 2d 55; People v. Malinsky, supra) but never in a situation such as is presented here. In this case, the record is complete and there is nothing to indicate that Detective Mugan did *138 not include in the affidavit all the information he possessed. Moreover, since the issuance of a warrant is a discretionary act based upon a finding of probable cause as a result of certain information given to the Magistrate, it seems to us that the reviewing court is bound to pass upon that exercise of discretion only in light of the evidence which the Magistrate had before him. Furthermore, it would be manifestly unfair to the defendant to now allow the People to offer proof that the informer told the officer he saw the defendant in possession of the gun. The People had an opportunity to establish that fact when the warrant was originally sought and at the suppression hearing. A remand with the benefit of hindsight derived from an appellate court opinion offers too facile a means for establishing probable cause after the event.
In the view that we have taken of this case, the defendant’s admissions made to the police only after he had been confronted with the illegally seized items should also be suppressed. Prior to the illegal search and seizure, the defendant had not incriminated himself. Upon being confronted with the illegally seized items, however, he immediately responded to Detective Mugan’s questions. Under these circumstances, it is clear that the admissions are tainted by the primary illegality. The link between the illegal search and seizure and the subsequent admissions is not only straight but short and immediate. Nor is there anything in this record to indicate that the relationship between the primary illegality and the resulting admissions had ‘ ‘ become so attenuated as to dissipate the taint ” (Nardone v. United States, 308 U. S. 338, 341). As we said in People v. Rodrigues (11 N Y 2d 279, 286): “Rodriguez argued that certain statements of his were improperly received in evidence, that he had been induced to confess to the killings after being confronted with a gun and other articles illegally obtained from his room. If, as he asserts, any of his statements were the product or fruit of an illegal search and seizure, they should have been excluded: the rule announced in Mapp v. Ohio (367 U. S. 643) renders inadmissible not only the items obtained, but any evidence which stems from their use * * * In short, the exclusionary rule covers not only the evidence illegally obtained, but the product of the unlawful search as well. The underlying rationale is that government may not violate the *139 constitutional guarantee (U. S. Const., Fourth Amdt.) and ‘ use the fruits of such unlawful conduct to secure a conviction.’ (Walder v. United States, 347 U. S. 62, 64-65, supra.) And, obviously, it matters not that these ‘ fruits ’ happen to be confessions rather than some other type of evidence.”
Accordingly, the judgment appealed from should be reversed and the indictment dismissed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Judgment reversed, etc.

 " To approve this affidavit would open the door to easy circumvention of the rule announced in Nathanson [290 U. S. 41] and Giordenello [infra], A police officer who arrived at the ‘suspicion,’ ‘ belief ’ or 1 mere conclusion ’ that narcotics were in someone’s possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had ‘ received reliable information from a credible person ’ that the narcotics were in someone’s possession.”