■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. RICHARD ASARO, LAWRENCE CONKLIN, FRANK FERRARO, LEBRO FERRARO, EDWARD FOLEY, MILTON KELLOG, Also Known as JOHN KELLY, WILLIAM D. KIESWER, MARTIN SKIFFINGTON, and ANDREW ZUM, Also Known as SAM HILL, Respondents.— Appeal by the People from seven orders of the Supreme Court, Queens County, three dated June 24, 1968 and four dated June 25, 1968, which, after a hearing, granted in part motions to suppress evidence. A further order of the same court, dated September 12, 1968, correcting one of said seven orders (the one in defendant Kellog's case, dated June 25, 1968) so as to include a second list of items of evidence to be returned, has been reviewed by this court with the appeals from said seven orders. Orders affirmed. The search warrants were issued on the basis of affidavits sworn to by Detective John Labbat, who was assigned to the Queens County District Attorney's Detective Squad. In the separate affidavits submitted for the various warrants in question, Labbat deposed that he had received information from a reliable and confidential informant concerning a violent organization which had met at various times to promote a conspiracy against Communist and other left-wing groups. This organization had met secretly to train in the art of guerilla tactics and the use of bombs and incendiary devices; and was planning to attack such groups with these devices at their homes, business places, meeting places and installations. Nowhere in these affidavits did Labbat indicate who the informant was or in what way the information was reliable. At the suppression hearing, Labbat testified that the information had been supplied by police undercovermen. His knowledge of the facts came from reports of the undercovermen, whom he had never met. The reports were originally sent to a Sergeant Courtney and would be read in turn by Labbat. Courtney, who allegedly knew the informants, did not submit an affidavit to the Criminal Court Judge who issued the warrants; nor did he appear before him when the application for the warrants was made. Nowhere in Labbat's affidavits is the fact mentioned that the informants were police officers. There was no indication that the

informants had gained personal knowledge of the facts contained in the affidavits. The affidavits set forth no facts upon which a Judge could make an independent determination that the informants were credible and their information reliable. The affidavits were defective on their face under the test of *Aguilar* v. *Texas* (378 U. S. 108). Moreover, the deficiencies therein were not cured by supplemental verbal statements allegedly made by Labbat to the issuing Judge. Labbat testified at the suppression hearing that he had told the issuing Judge that the informants were policemen whose names could not be disclosed, in order to insure their safety. Labbat admitted that his statements were neither transcribed nor under oath when he supplied this information. This mode of procedure cannot be used to bolster an otherwise defective affidavit in support of a search warrant (*People* v. *Mitchell*, 30 A D 2d 845, affd. 24 N Y 2d 952; *People* v. *Schnitzler,* 18 N Y 2d 457). Rabin, Acting P. J., Martuscello, Latham and Kleinfeld, JJ., concur; Benjamin, J., dissents and votes to reverse the orders and deny the motions to suppress, with the following memorandum: According to the police, defendants are members of the Minutemen, an extremist right-wing organization which was the subject of an intensive police investigation. Much of the investigation was carried on by two undercover police officers, who filed detailed written reports with their superior officers. When considerable information had been obtained about the members of the Minutemen, their plans and preparations to bomb and burn the facilities of left-wing organizations. and the large caches of weapons and explosives at the homes of these defendants, the Queens County District Attorney's office was advised about the still pending police investigation. Detective Labbat of the District Attorney's office was assigned to act as liaison with the police and was briefed on the case; he was shown the original reports of the undercover police officers and was told that the informants were police officers, but he was not told their names. After several months of almost-daily conferences between Labbat and one of the police officers in charge of the investigation, Labbat executed affidavits for warrants to search defendants' homes. In these affidavits he stated that he had received information from an unnamed "reliable and confidential informant" that the defendants were conspiring to attack left-wing groups and to bomb and burn their meeting places' and other facilities; and that defendants' homes and cars contained weapons, bombs and records of the Minutemen organization. The affidavits were replete with evidentiary detail concerning defendants, their residences and cars, their meetings and their activities. When Labbat submitted the affidavits to a Criminal Court Judge for issuance of the search warrants, he told the Judge orally that the confidential informants were undercover police officers whose lives would be endangered if their names were revealed; this supplemental oral statement was not made under oath and was not recorded by a stenographer. In my opinion, the information in Labbat's affidavits concerning defendants and their activities was so detailed that it reasonably imported credibility and first-hand knowledge on the part of the informants. The affidavits thus sufficiently established the reliability of the informants and probable cause for issuance of the search warrants by the Criminal Court Judge (see *People* v. *Hendricks*, 25 N Y 2d 129, 136; *People* v. *Schnitzler,* 18 N Y 2d 457; *United States* v. *Ventresca*, 380 U. S. 102). And if the quesion were deemed close (though I do not think it is), "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants" and "where these [underlying] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in

a hypertechnical * * * manner" (*United States* v. *Ventresca, supra,* p. 109 [word in brackets supplied]). Apart from the foregoing, if we were to assume *arguendo* that the affidavits were insufficient on their face, but would become sufficient if bolstered by Labbat's oral statements to the Criminal Court Judge, I would not affirm the suppression of the seized items but would instead remand for a further hearing. Neither the Criminal Court Judge nor his clerk testified at the suppression hearing, so the record does not show whether the Judge's or clerk's minutes contain any record of the oral statements made by Labbat. If they do, those statements could be used to bolster the written affidavits (see *People* v. *Schnitzler, supra,* p. 461).