THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* DURWARD KENT JOHNS, JR., Respondent.

Third Department, May 3, 1973.

*Andrew F. Siedlecki, District Attorney (Robert J. Simpson of counsel), for appellant.*

*Battaglini & Shamulka (Richard A. Battaglini of counsel), for respondent.*

GREENBLOTT, J.   This is an appeal from an order of the County Court of Tioga County, entered September 29, 1972, which granted the defendant's motion to suppress evidence.

This appeal presents a question as to the legality of a search and seizure undertaken pursuant to a search warrant, valid on its face, but subsequently proven defective.

At approximately 2:00 A.M. on April 6, 1972, the Tioga County Sheriff's Department was notified, by means of an alarm, of a burglary at a restaurant in the Town of Owego.  Deputy Rhodes was amongst those dispatched to the scene, and after a preliminary search of the burglarized premises, he proceeded to cross the road to see if he could observe " anything out of the ordinary ".  A considerable period of time thereafter, he observed the vehicle driven by the respondent approaching the scene of the crime.  He followed this vehicle for approximately one quarter of a mile, and then stopped it for a vehicle check.  There were no passengers.  The respondent did not have an operator's license, and a check soon revealed that his license had been revoked.  Shortly thereafter, respondent was arrested for driving while his license was revoked.

While Deputy Rhodes was engaged with the respondent, State Trooper Bell came along and confronted two men, Steven Paxson and Melvin Blossom, standing under a street light at an intersection approximately 150 feet away.  After a few minutes, Trooper Bell came over to the respondent and asked him a few questions.  Respondent acknowledged a prior arrest for burglary, and gave his consent to a search of the trunk.  However, he refused to allow a search of a tool box which had been sitting on the rear floor and which he had told Deputy Rhodes was used in his trade as a self-employed mechanic.  A few minutes thereafter, Sheriff's Deputy Angus arrived.  Respondent was advised of his rights, formally placed under arrest on the afore-mentioned charge, and Angus removed the tool box from the car and searched it, revealing a large quantity of loose quarters.  At some prior time, respondent had been frisked for weapons, none being discovered.  At this point, respondent was removed for arraignment on the motor vehicle charge.  It was not until a number of hours later that he was charged with any other crime.

In sum, respondent was arrested for a crime which has no fruits or implements, there was no reason at that time to sus-

pect that he had been involved in the restaurant burglary, and a frisk for weapons had already occurred. The search of the tool box under the circumstances just described was therefore illegal, and we affirm so much of the order appealed from as refused to admit into evidence the box and the coins found therein.

While respondent was remanded to jail in lieu of bail, Paxson and Blossom were taken to the Sheriff's office for questioning. At approximately 10:30 or 11:00 A.M., they admitted to having burglarized Trabucco Chevrolet, Inc., an automobile dealership which does not appear to have been known to the arresting officers at the time of their original detention. In sworn statements, they implicated respondent as a coparticipant and stated that the proceeds could be found in the vehicle he had been driving. At about noon, one or more officers returned to the site of the arrest, where respondent's vehicle had been left, and had the vehicle towed to a private storage barn belonging to one William Wonder. The car was placed in the barn, locked, and the keys left with Wonder.

Based on the statements by Paxson and Blossom, a warrant to search the car was sought and obtained, and the search was executed at approximately 4:00 P.M., leading to the discovery of various items, including rolls of coins and inspection stickers, which the People sought to introduce into evidence (People's Exhibits 1, 2, 3, 7). It subsequently appeared, however, that the application for the search warrant had not complied with the provisions of CPL 690.35 in that the application was not signed. A motion by the respondent to suppress the evidence was granted. We feel that this decision was erroneous.

CPL 690.35 sets forth in terms a requirement that a search warrant application "must" be signed and sworn. Even mandatory requirements, however, cannot be applied indiscriminately without consideration of their underlying purpose, and it is obvious to us that the purpose of article 690 is to establish procedures which would be in compliance with the strictures imposed by the constitutional prohibition against unreasonable searches and seizures. One of the basic premises under the Fourth Amendment is that, wherever practicable, the prior authorization of a disinterested Judge or Magistrate should be obtained by those who would conduct a search (*Coolidge* v. *New Hampshire,* 403 U. S. 443, 454). In enacting CPL 690.35, the Legislature must have been of the belief that the possible imposition of criminal penalties for false swearing would serve as a deterrent to abuses and misuses of the warrant procedure.

345

In the case before us, there was substantial compliance with the statutory purpose. The sworn statements of respondent's two alleged accomplices were annexed to the application and were the basis therefor. The police officer who was the formal applicant, on the other hand, merely recounted the statements made by Blossom and Paxson without adding any information based upon his own personal knowledge. In such a situation, the deterrent effect of requiring a sworn statement by the applicant was nonexistent, and the statutory purpose could not have been better served by literal compliance. Thus, when the police acted, they had every reason to believe that the prior judicial approval which the Fourth Amendment mandates had been obtained.

In such circumstances, we see no valid reason for classifying the search and seizure as constitutionally unreasonable. As Mr. Justice HERLIHY has said on a prior occasion, "a failure to strictly comply [with the statutory requirement] should not render the search warrant order illegal or void in the absence of a showing that such noncompliance infringes on the right to be free from unreasonable searches" (*People* v. *Ricken,* 29 A D 2d 192, 194–195, dissenting opn.). The dangers which the Fourth Amendment is designed to guard against are not present when the police seek the prior approval of a Magistrate. The *Ricken* case involved a failure by the police to appear before a Magistrate, and therefore is distinguishable on its facts, but it should be noted that we did there imply our approval of the result reached in *People* v. *Mancinelli* (50 Misc 2d 952) where there was an appearance before the Magistrate but noncompliance with a statutory technicality and the warrant was nevertheless upheld. On the facts before us, we therefore hold that the search was not unreasonable within the spirit of the Fourth Amendment so as to require exclusion of the evidence seized.

The court notes that there is an additional meritorious contention raised by appellant which is not necessary to reach in deciding the case. The vehicle which defendant was driving was never impounded and Deputy Lomardi testified that the owner was free to drive it away. It should be noted that the respondent's mother was the owner of the vehicle. From the time police obtained the statements of the codefendants which provided them with probable cause for the search, there was a constant danger that the vehicle could have been driven away and the evidence lost, destroyed or removed from the jurisdiction. Under these exigent circumstances, a search without a warrant would have been permissible (*Chambers* v. *Maroney,* 399 U. S. 42, 51–52).

The order should be modified, on the law and the facts, so as to reverse so much of the order as granted suppression of People's Exhibits 1, 2, 3 and 7, and, as so modified, affirmed.

HERLIHY, P. J., COOKE, KANE and MAIN, JJ., concur.

Order modified, on the law and the facts, so as to reverse so much of the order as granted suppression of People's Exhibits 1, 2, 3 and 7, and, as so modified, affirmed.