THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL PETERSON, Appellant.

Third Department, May 1, 1975

*Livingston L. Hatch* for appellant.

*Ara Asadourian, District Attorney (Norman J. Dame* of counsel), for respondent.

KANE, J. This is an appeal from a judgment of the County Court of Clinton County, rendered June 28, 1974, convicting defendant, on his plea of guilty, of the crimes of criminal

possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree.

On December 4, 1973, premises occupied by the defendant in the City of Plattsburgh were searched in his presence. A quantity of controlled substances, two sawed-off shotguns and implements used to administer drugs were discovered and seized. Defendant ultimately pleaded guilty to a reduced charge of criminal possession of a controlled substance in the third degree and a related charge of criminal possession of a controlled substance in the fifth degree in satisfaction of the ensuing criminal action. The only issue of importance presented on this appeal concerns the trial court's denial of defendant's pretrial motion to suppress the evidence obtained as a result of that search.

At the suppression hearing the prosecution offered the testimony of two witnesses: a detective from the Plattsburgh Police Department who investigated the case, applied for a search warrant and conducted the search, and the Acting City Court Judge who issued that warrant. Since they were not cross-examined and the defense offered no contrary proof, their accounts stand factually secure. Nevertheless, defendant maintains that the search warrant was fatally defective for want of compliance with CPL 690.40 (subd 1). That statute provides as follows: "In determining an application for a search warrant the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court." Here, it is claimed that the detective's application for the search warrant was, standing alone, insufficient to justify the issuance thereof and that since other information received by the Acting City Court Judge, although under oath, was neither recorded nor summarized on the record of that court, no legal basis existed to authorize the search of the designated premises.

Despite the trial court's determination that the detective's application was legally sufficient to support the warrant, it seems clear to us that it contained only conclusory allegations and failed to detail any facts from which probable cause to search could have been discovered. Therefore, if the search warrant in this case is to be sustained, we must first decide whether the examination here conducted adduced a sufficient foundation to permit the issuance of that warrant and, if so,

whether reliance may properly be placed on an examination conducted under oath by an issuing court when the results thereof are not recorded.

The detective testified that his suspicions concerning the involved premises were aroused when he received information relating thereto from other law enforcement agencies about a week before the search. He then secured the assistance of a confidential informant, with whom he had worked at various times in the preceding four years, in order to pursue an investigation of the matter. The detective further testified that this informer and his information had proved to be reliable in the past, bolstering this conclusion by referring to the receipt of satisfactory performance reports on his prior work for other agencies and by describing an earlier incident wherein he had personally verified this informant's claim that another sold drugs by actually observing such a sale to this informant by that individual. The informer thereafter reported on a daily basis to the detective and, in the evening of the day of the search, related that he had been in the investigated premises that day and witnessed the arrival therein of methamphetamine which was then being packaged, a process estimated to take less than an hour to complete, after which the occupants were planning to depart for Texas. In addition, he mentioned that the front entrance was barred and also specified in some detail the location of shotguns, marijuana and sundry narcotic instruments within the premises. The detective hastily prepared the defective application and, together with his informant, proceeded to the home of the Judge, where, according to him, both were placed under oath and orally related most of the foregoing circumstances. Although it is not clear whether the detective identified his informer, the Judge testified that he placed both men under oath and received assurances from the detective of the informant's veracity and past reliability in drug cases. The Judge also testified that he discussed the substance of what he had been told with the informer and, when he asked him how he knew the drugs were in the premises to be searched, received the significant reply that "I helped to unload it."

Still accompanied by his informant, the detective and other officers went to arrest those possessing this contraband and execute the recently issued warrant. The informer identified himself to those within the premises, thereby gaining access for the officers when the door was unlocked to admit him.

Once inside the detective immediately arrested the defendant and others present and, in the same room, discovered most of the items he had been informed he would find and in the locations previously supplied.

We have no difficulty in concluding that this uncontradicted factual sequence would, in the ordinary case, provide sufficient probable cause to justify the issuance of a search warrant. The informant's reliability was adequately predicated upon his past performance, he was not an anonymous "tipster", and his tale made it clear that he spoke from firsthand knowledge. Had the detective been able to reduce this account to writing and include it as mere hearsay within his application, our inquiry would be at an end (People v Wheatman, 29 NY2d 337; People v Hendricks, 25 NY2d 129; People v Montague, 19 NY2d 121).

We do not believe that the result should differ because the issuing court failed to record that account. This is not a case where the applicant failed to appear before the issuing Magistrate (People v Ricken, 29 AD2d 192, affd 27 NY2d 923), was unable or failed to provide information relative to the credibility of his informer (People v Mitchell, 30 AD2d 845, affd 24 NY2d 952), or one where the attempted bolstering of the informers by the applicant took place in the absence of an oath (People v Asaro, 34 AD2d 968). The instant case presents a far different situation.

Borrowing from another example, the failure of an applicant to personally sign his application will not necessarily invalidate the warrant thereupon issued (People v Johns, 41 AD2d 342; cf. People v McIver, 39 AD2d 671, affd 31 NY2d 735). As we therein noted, "even mandatory requirements, however, cannot be applied indiscriminately without consideration of their underlying purpose" (People v Johns, supra, p 344). It is obvious to us that one of the CPL purposes to be served by 690.40 is a preservation of the bases upon which search warrants are issued so that the grounds for such action may be reviewed at a later time should the need therefor arise. It is the necessity of taking an oath, and not the act of recording the testimony adduced thereunder, which serves as a deterrent to an abuse of the warrant process. Since the participants in the procurement of this warrant were available and able to recollect their prior statements, we fail to see how the statutory purpose was here frustrated or the defendant's rights prejudiced by the issuing court's failure to record

the transaction, especially when the statute is silent as to when that recordation should take place. Here more than a recital of the informer's reliability was offered to the court under oath, the informer himself was presented and vouched for his own credibility (cf. *People v Schnitzler,* 18 NY2d 457).

We also point out that the record clearly demonstrates that defendant was aware of this informant's identity and his location at the time of the hearing. Thus, no *in camera* inquiry of him was required when the defense requested his production at the hearing (cf. *People v Darden,* 34 NY2d 177) and, under these circumstances, it cannot be said that defendant was deprived of any opportunity to examine him or his account (cf. *People v Alaimo,* 34 NY2d 187; *People v Darden, supra,* p 182). Finally, we have examined the other issues raised by defendant and find them lacking in merit.

The judgment should be affirmed.

HERLIHY, P. J., GREENBLOTT, SWEENEY and REYNOLDS, JJ., concur.

Judgment affirmed.