Fuchsberg, J.
(dissenting). The search and seizure in this case was carried out under a warrant issued without a showing of probable cause under oath or affirmation. The gains so gotten should, therefore, have been suppressed.
For section 12 of article I of the New York State Constitution expressly provides in pertinent part that "no warrants shall issue, but upon probable cause, supported by oath or affirmation”. That protective guarantee is unmistakably reiterated in the Fourth Amendment to the United States Constitution in identical language. And, consequently, the matter under oath or affirmation must set forth facts establishing probable cause (Nathanson v United States, 290 US 41, 47; *191 see, also, Jones v United States, 362 US 257; Draper v United States, 358 US 307; Comment, 28 U Chi L Rev 664).
That constitutional principle is not to be trifled with. It is grounded on overriding concern that private premises not be invaded "on the basis of information, even if it appears quite damning when simply taken at face value, unless there is corroboration of its trustworthiness” (United States v Harris, 403 US 573, 588 [Harlan, J., dissenting]).
That that requirement was violated here is clear. Indeed, the facts are not disputed:
On September 20, 1972, Patrolman Joseph Fuller, accompanied by a registered confidential informer, appeared before a Judge to request a search warrant for a Bronx apartment. In lieu of the express statutory requirement of a written application (CPL 690.35, subd 1), Officer Fuller was permitted to testify under oath to the information supplied by his informer. According to the officer, the informer had been at the apartment on two earlier occasions when he had observed several persons engaged in the packaging of narcotics and two pistols on a table. Though present in court, the informer did not testify. The record discloses that the Judge did, however speak to him "off the record” and then stated, "I have heard the informer and after * * * hearing the officer the information tallies and I consider that he’s reliable”. A broad search warrant was then issued. Though Officer Fuller had not requested either nighttime or "no-knock” authorization, it allowed execution at any time of day or night, without the necessity for announcement of the authority or purpose of those who were to execute it. When, seven days later, the warrant was executed, a quantity of narcotics and two pistols were found on the premises.
With those facts in mind, we put aside for now the question as to whether in New York, in accordance with the explicit language of our CPL 690.35 (subd 1), the support for a search warrant must always be set forth in writing (cf. People v Johns, 41 AD2d 342, 344-345; United States ex rel. Gaugler v Brierley, 477 F2d 516; United States v Hill, 500 F2d 315). Obviously, a written record has advantages. It affords a reliable basis for expeditious review. The ready judicial accountability which it makes possible also is a strong antidote against the substitution of subjective for objective standards (cf. Frazier v Roberts, 441 F2d 1224, 1229; Naples v Maxwell, 271 F Supp 850, revd on other grounds 393 F2d 615). But, for the *192 purpose of our disposition here, it suffices to fall back alone on the literal constitutional requirement for an oath or affirmation and we, therefore, now turn to a consideration of what is required to be shown under such oath or affirmation in order to constitute probable cause.
For that purpose the law treats information whose source is an informer with understandable caution and, while a police officer or other affiant may, in an affidavit in support of the warrant, rely upon hearsay information obtained from an informer (Jones v United States, 362 US 257, 270, supra; People v Hendricks, 25 NY2d 129, 133), the affidavit must meet the two-pronged test laid down in Aguilar v Texas (378 US 108) and Spinelli v United States (393 US 410). That test "requires that the affidavit show (1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question” (People v Hendricks, 25 NY2d 129, 133, supra). "By applying this test to the application before him, a Magistrate would be assured that the source was reliable, and could judge for himself the persuasiveness of the facts relied on thereby determining the probable accuracy of the information and of the soundness of the logical deductions drawn from that information” (People v Hanlon, 36 NY2d 549, 556, supra).
The second prong of the test is not challenged here because the officer spelled out that the informer "came by [the] information” which he had communicated to the police officer by direct observation, a valid basis for establishing its reliability (People v Munger, 24 NY2d 445). It is the first prong, i.e., reliability of the informer, which appellant urges, soundly I suggest, has not been satisfied.
An informer’s reliability can be established in several ways: The affiant may aver that the informer is reliable because he has previously supplied accurate information (People v Montague, 19 NY2d 121; People v Rogers, 15 NY2d 422). Or, the affiant may attest to the existence of independent objective verification of the informer’s story (People v Hanlon, supra; People v Alaimo, 34 NY2d 187; People v Malinsky, 15 NY2d 86; People v Coffey, 12 NY2d 443, cert den 376 US 916). And, of course, a sworn statement made by a known informer himself, attesting to facts which he personally observed, is not hearsay and in and of itself would support the issuance of a *193 warrant (People v Hicks, 38 NY2d 90, 92, 94). Even in United States v Ventresca (380 US 102), which the majority cites as bespeaking a "commonsense” approach, it is illuminating that the warrant was issued upon a government agent’s affidavit, whose facts were garnered not from an informer, but from "fellow officers * * * engaged in a common investigation” alone, including observations supporting probable cause made first hand by the affiant himself (p 111). It is to be noted that in each of these cases the assurance of reliability is embraced within the material before the Judge under oath.
In brief, in the present case, as the majority concedes, the affidavit of the officer was alone insufficient to establish probable cause and, whatever necessary supplemental testimony of his reliability the informer might have been able to supply under oath, none was provided. For not only was the interview with the informer unrecorded but, here fatally for the warrant, it was unsworn as well. Indeed, the scanty recording that the interview had taken place, if anything, suggests that, even if it had been recorded and under oath, it was barren of substance. The Judge’s observation that the informer’s tale "tallied” with the officer’s only served to bolster the reliability of the officer; it in no way established the reliability of the informer himself. Neither an issuing Magistrate nor a police officer applicant may, consistent with the applicable constitutional protections, omnisciently pronounce an informer’s reliability in the absence of supporting data any more than either may do so, to establish, to repeat the majority’s quotation, "the persuasiveness of the facts relied on * * * to show probable cause” (Giordenello v United States, 357 US 480, 486; Aguilar v Texas, 378 US 108, 114, supra).
It is almost confirmatory of the strictness of the requirement for an oath or affirmation that, when a plurality of the Supreme Court essayed an exception, it did so with much division and debate and only in a case where an informer, among other things, had acted against his penal interest in admitting his own wrongdoing, a circumstance not prevailing here (United States v Harris, 403 US 573, 594, supra). To reach from there to resort to the rationale that an informer is reliable because unless his information is truthful, he might possibly be subject to prosecution for "falsely reporting an incident”, would be to veer towards an undermining of the salutary requirement for an informer’s corroboration altogether.
*194 Moreover, in addition to the fact that we would not be compelled to follow the Harris case as a matter of New York State law even if the factual context here had been the same as the one there (Cooper v California, 386 US 58, 62; Sibron v New York, 392 US 40, 60-61; Oregon v Hass, 420 US 714, 728), Harris provides no support for the drastic and still further departure from the language of the fundamental constitutional safeguard which confronts us here. Sound law enforcement does not require such a retreat; nor does the fact that the search here was pursuant to a warrant permitting it.
Our preference that searches be made pursuant to warrants rather than without them does not mean that the former may be made without meeting at least the minimum established requisites of probable cause.
Therefore, there should be a reversal.
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Wachtler; Judges Jones and Fuchsberg dissent and vote to reverse in separate opinions in both of which Judge Cooke concurs.
Order affirmed.