OPINION OF THE COURT
Larry M. Himelein, J.
On March 15, 1993, Investigator Shelly Kelly of the Southern Tier Regional Drug Task Force brought a confidential informant before County Judge Michael L. Nenno to provide in camera testimony in support of a search warrant application. After swearing the confidential informant and hearing his testimony, and after Investigator Kelly swore to her application, Judge Nenno issued a search warrant authorizing the search of room 12 of the El Rancho Motel in Hinsdale. A tape recording of the confidential informant’s in camera testimony was made and preserved.
After receiving the warrant, Investigator Kelly and several other members of the Task Force traveled to the motel to execute the warrant. Upon arriving, Kelly spoke with a maid who told her that the three black males in room 12 had been moved to room 15 because of a plumbing problem in room 12. The three were the only black males then staying at the motel; in fact, only one other guest was registered.
Kelly then called Judge Nenno and explained the situation to him. Kelly was not resworn or reminded that she was still under oath and no notes were taken or recording made of this conversation. Judge Nenno directed Kelly to amend the search warrant to authorize the search of room 15. Kelly complied and room 15 was searched, resulting in the seizure of the items defendant now seeks to suppress.
Initially, defendant seeks discovery of the tape made of the in camera testimony of the informant. His attorney claims correctly that it is difficult, if not impossible, to challenge the issuance of the search warrant without access to what was said to the Magistrate. However, the Fourth Department has long held that a defendant has no absolute right to the identity, affidavits or testimony of a confidential informant; all that is required is an independent judicial review of the facts presented to the issuing Magistrate (People v Diaz, 147 AD2d 912; People v Seager, 147 AD2d 932; People v Delgado, 134 AD2d 951, lv denied 71 NY2d 895).
Recently, the Court of Appeals also held that, in some circumstances, in camera review of search warrant applications and affidavits, including the testimony of the informant, *30 is permissible (People v Castillo, 80 NY2d 578). The Court concluded that, in exceptional circumstances, a defendant’s interest in availing himself of the exclusionary rule is subordinate to “safety precautions necessary to encourage citizens to participate in law enforcement” (supra, at 583). Further, in cases where the issuing Magistrate examined the informant, the suppression court’s review is simplified; given the presumption of validity that attaches to the warrant and the fact that the suppression court had a transcript of the informant’s testimony (or, as here, the actual tape), the reviewing court has only the relatively uncomplicated task of deciding whether the issuing Judge could have concluded that probable cause existed (supra, citing People v Hanlon, 36 NY2d 549; People v Hendricks, 25 NY2d 129; People v Rainey, 14 NY2d 35).
The court noted that the four-step procedure set forth in People v Seychel (136 Misc 2d 310) had been followed in denying discovery of the information presented to the issuing Magistrate. The first step in this process is to examine this information to determine whether probable cause was established by the Aguilar-Spinelli standard* or whether it was perjurious on its face. I have reviewed the search warrant application of Investigator Kelly and listened to the tape of the in camera testimony and conclude there was ample probable cause to issue the warrant.
The second step is to conduct an ex parte inquiry of the informant to evaluate the claim that the informant’s safety would be jeopardized by disclosure. On September 16, 1993, I conducted an ex parte interview with the informant and am satisfied that disclosure of the informant’s identity would in fact be dangerous. A court reporter was present for this inquiry. The informant and Investigator Kelly testified under oath and the reporter’s notes will be available for review by the Appellate Division should that become necessary.
Third, in reviewing the tape, I endeavored to decide if portions could be redacted. However, any redaction would have to include virtually all the information presented to Judge Nenno and I conclude that redaction is not a viable option.
The fourth step discussed in Seychel (supra) is an ex parte *31 (Darden) examination of the informant to evaluate the informant’s credibility "as to the information contained in the warrant” (supra, at 314). The court would then make a sealed record and summarize the information for defense counsel. Frankly, this step seems unnecessary. First, a Darden hearing (see, People v Darden, 34 NY2d 177) is not utilized when an informant has appeared before the Magistrate; a Darden hearing is used when there is a legitimate concern that the informant is a fabrication whose existence was falsified and phony information from this nonexistent informant was put into a search warrant application by a police officer. A Darden hearing requires the reviewing court to examine the informant in camera to determine that he did in fact exist and did provide the information attributed to him. Darden has no applicability where the informant appeared before the Magistrate; the Magistrate has then seen him and knows of his existence.
Further, to summarize the information for defense counsel would be to effectively identify the confidential informant. If the informant’s testimony cannot be redacted without revealing his identity, summarizing the information provided would seem to occasion the same result. In any event, I interviewed the informant with reference to the testimony given to Judge Nenno and am satisfied with the informant’s credibility. I note that the confidential informant first had to satisfy Judge Nenno as to his credibility and provided preserved testimony at that time; had to satisfy this court, again with preserved testimony; and both determinations are reviewable by the Appellate Division.
I note that the Court of Appeals did not mandate that the Seychel procedure be followed (see, People v Castillo, supra) and the Fourth Department has never required as much as Seychel (supra; see, People v Diaz, supra; People v Seager, supra; People v Delgado, supra). Nonetheless, the Seychel procedure was followed here except that I did not summarize my in camera interview of the confidential informant on the record for fear that doing so would reveal his identity.
Defense counsel has raised the point that he would not reveal to his client any information that was disclosed to him and ordered to be kept confidential and thus, it should be released to him. I have two problems with that procedure. First, it puts counsel in the position of seeking to attack the warrant without input from his client about the confidential informant’s testimony to the Judge. Further, any suppression *32 motion made that incorporates this information then becomes a public record, available as much to defendant as anyone else. I believe the Court of Appeals understood that there are some situations that require the courts to consider the various challenges that could be made on a defendant’s behalf, even if not made by the defendant himself (see, People v Castillo, supra, at 585-586). Accordingly, the application for the in camera testimony of the informant is denied.
More difficult is the issue of the modification of the search warrant after the telephone call from Investigator Kelly to Judge Nenno. Initially, this is, as the People contend, a written search warrant application supported by oral testimony (see, People v Taylor, 73 NY2d 683, supra). As a written application, substantial rather than literal compliance with the requirements may be satisfactory (supra, at 688-689, citing People v Brown, 40 NY2d 183, and People v Sullivan, 56 NY2d 378). Although Brown concerned CPL 690.35 and Sullivan dealt with the requirement of an oath, other cases seem to apply the "substantial compliance” standard to CPL 690.40 (1) as well (see, e.g., People v McGriff, 142 AD2d 934, 935; People v Peterson, 47 AD2d 431; People v Lopez, 134 AD2d 456).
Here, defendant makes several arguments: Investigator Kelly was not under oath when she called Judge Nenno from the motel; the conversation was not recorded or summarized; and Kelly should have returned to Judge Nenno for a new warrant. Any or all of these failures thus should result in suppression.
When she appeared with the confidential informant before Judge Nenno, Investigator Kelly swore to the search warrant affidavit. Given that, the failure to reswear her or remind her she was still under oath is insignificant. Just as a witness who testifies at a trial is not resworn if recalled as a witness days or even weeks later, I conclude that one who gives sworn testimony in support of a search warrant is still under oath if she gives further testimony in support of the same warrant. Reminding a witness that she is still under oath seems to be a requirement of practice rather than a legal mandate. Moreover, in connection with the oath requirement of CPL 690.40 (1), the Court of Appeals has clearly permitted substantial rather than literal compliance (People v Sullivan, supra).
Concerning the question of whether the failure to record or summarize the subsequent conversation mandates suppres *33 sion, People v Taylor (supra) notes the twin legislative purposes of this requirement: (a) assuring the regularity of the application process (citing People v Crandall, 108 AD2d 413, affd 69 NY2d 459) and (b) preserving for appellate review the grounds upon which the search warrant was issued (citing People v Peterson, supra). Here, the failure to record the telephone conversation between Kelly and the Judge had no effect on the regularity of the application process; in fact, the process to that point was done appropriately. The police prepared a written search warrant application and supported that with the sworn in camera testimony of the informant which was tape recorded and preserved. The Magistrate made a determination that probable cause existed and issued the warrant. Only upon execution did the case become complex.
Similarly, the failure to record Kelly’s call has no effect on the ability of higher courts to review the grounds upon which the warrant was issued. Everything related to the probable cause determination has been preserved; the only unpreserved testimony related to where the warrant should be executed. Since there was clearly probable cause to believe contraband would be found in room 12, the same probable cause existed to believe the items would be in room 15. It is unrealistic to believe that the three males would have moved out of room 12 because of a plumbing problem and left behind the contraband.
The cases that have suppressed because of the failure to record or summarize some or all of this type of information did so because the unpreserved testimony dealt with probable cause itself (see, e.g., People v Taylor, supra; People v McGriff, supra). Thus, the reviewing court could not review the grounds upon which the warrant was based. Even where probable cause is concerned, however, the failure to record some of the information is not always fatal (People v Lopez, supra; People v Peterson, supra). Here, the unpreserved statements have no bearing on the probable cause determination but relate only to which room would be searched.
While the Court in Taylor (supra) was critical of relying on after the fact representations of the police as to what they told the Judge (at 690), the facts of this case justify relying on what Kelly testified she told the Judge. First, her testimony on this point was not challenged and in fact was accepted by the defense; second, her testimony did not relate to the issue of probable cause; and third, her testimony was corroborated by the notations on the search warrant and the search war *34 rant application that the room to be searched was changed per Judge Nenno’s direction.
Finally, other legal principles justify sustaining this search warrant. The law strongly favors search warrants and where a warrant is secured, the bona tides of the police will be presumed and the search upheld in an otherwise marginal or doubtful case (People v Hanlon, supra; United States v Ventresca, 380 US 102). Moreover, the preference accorded a search warrant and the presumption of validity are particularly strong where the exigencies of the situation demand quick action (People v Williams, 119 AD2d 606; People v Sinatra, 102 AD2d 189; People v Hanlon, supra). Here, with at least eight officers and three vehicles on the scene and the targets, who were armed, having moved from one room to another, the exigencies permitted the warrant to be amended in the manner utilized rather than require a new trip to the Judge and a new warrant.
For all of these reasons, the motion to suppress is denied.

 The Aguilar-Spinelli test, however, does not apply when the informant appears personally before the Magistrate (People v Taylor, 73 NY2d 683; People v Bartolomeo, 53 NY2d 225).