OPINION OF THE COURT
Walter T. Gorman, J.
The defendant, Mario Maldonado, is charged in the instant indictment with the following crimes: two counts of criminal possession of a weapon in the third degree, one count of criminal possession of a weapon in the fourth *243 degree, and two counts of criminal possession of stolen property in the second degree. All of these charges deal specifically with the defendant’s possession of a pistol and an IBM Selectric II typewriter, both of which were seized during the execution of a search warrant on September 24, 1982.
The defendant, as part of his omnibus motions filed with the court on April 15,1983, moved to suppress all property seized in the September 24, 1982 search of his residence, his mailbox and the basement area of the apartment building. The People responded by answering affidavit filed May 6, 1983. Oral arguments were heard with respect to this suppression motion on June 3, 1983.
Based upon a careful review of the search warrant, its supporting affidavits, the arguments of counsel and the applicable case law, the following findings of fact and conclusions of law are made.
FINDINGS OF FACT
On September 23, 1982, Syracuse Police Department Officer Peter G. O’Brien sought a search warrant in order to effectuate a search of the residence of the defendant located at 440 West Taylor Street, apartment Ño. 19, in the City of Syracuse. In support of his application for the search warrant, Officer O’Brien executed a voluntary affidavit, attaching thereto a voluntary confessional affidavit executed on September 7, 1982 by Carita Bragan.
Contained within the corners of Officer O’Brien’s voluntary affidavit was the following:
(1) information provided by an “ordinary citizen”;
(2) information obtained from a confidential informant;
(3) independent corroborative evidence obtained by members of Officer O’Brien’s department as well as by Officer O’Brien personally; and
(4) a description of the contents of Carita Bragan’s voluntary confessional affidavit.
Based upon the supporting papers submitted to him by Officer O’Brien, Syracuse City Court Judge Robert Z. Srogi signed a search warrant on September 23, 1982, authorizing a: “search at any time of the day or night of the *244 residence of Mario Maldonado, the mailbox and basement area in the building situated, viz. 440 W. Taylor St. Apt 19, including all persons present, the person of Mario Maldonado, and all appurtenant areas of access and egress to said apartment * * * for * * * the controlled substance Tal win, hypodermic needles and all drug paraphernalia used in the sale, possession, and use of said controlled substance”. The search warrant was executed the following day.
The following inventory was made of the property seized: (1) a loaded Reck P8 KAL 635 MM. (pistol); (2) five empty Tal win bottles; and (3) 28 hypodermic needles. Judge Srogi signed the return on September 27,1982. The defendant now seeks suppression.
CONCLUSIONS OF LAW
The old test used to determine whether a search warrant was based on probable cause when the application contained hearsay was outlined by the United States Supreme Court in Aguilar v Texas (378 US 108) and Spinelli v United States (393 US 410). That test, commonly referred to as the “two-pronged test”, required that in order for hearsay information to provide probable cause for the issuance of a warrant, it must be shown that the informant (1) had a “basis of knowledge” for his information, and (2) was a reliable or credible person.
The Aguilar and Spinelli “two-pronged test” has now been replaced. On June 8, 1983, the United States Supreme Court, in the case of Illinois v Gates (462 US_, _., 33 Crim L Rptr 3109, 3114), held that that test was hypertechnical and unworkable and, therefore, replaced it with a “totality of circumstances” approach.
The Gates court’s test reads as follows: “The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a ‘substantial basis for * * * concluding]’ that probable cause existed”. (Supra, at p_, 33 Crim L *245 Rptr, at p 3116 [citing Jones v United States, 362 US 257, 271].)
The Gates case (supra) involved a warranted search of the petitioners’ house and automobile during which marihuana, weapons and other contraband were found. The warrant was obtained based upon the affidavit of a police officer who had received an anonymous letter which outlined the drug-related activities of the petitioners and upon some other police investigations. The Illinois Supreme Court had held that the letter failed to meet either prong of the Aguilar and Spinelli test and, therefore, affirmed the trial court’s suppression. The United States Supreme Court reversed (p __, 33 Crim L Rptr, at p 3113), saying that the informant’s veracity, reliability and basis of knowledge “should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case * * * [but are rather] intertwined issues that may usefully illuminate the common-sense, practical question whether there is ‘probable cause’ to believe that contraband or evidence is located in a particular place.” The court continued (p_., 33 Crim L Rptr, at p 3114), saying that “probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.”
Under this new “totality of circumstances” approach, in order to determine whether the issuing magistrate had a “substantial basis for concluding that probable cause existed”, it is necessary that all the information presented to the issuing magistrate be reviewed.
INFORMATION PROVIDED BY CARITA MAY BRAGAN
The Judge who signed the search warrant had before him not only Officer O’Brien’s affidavit which contained an outline of what Ms. Bragan had informed the police, but also attached thereto and made a part thereof, the voluntary confessional affidavit of Ms. Bragan herself executed on September 7, 1982. This information will be considered collectively.
Ms. Bragan was stopped by an officer of a narcotics unit (of which Officer O’Brien is a member) on September 7, *246 1982, after having been observed leaving Mario Maldonado’s apartment. She stated in her affidavit that she had, in fact, left the defendant’s apartment and that while in his apartment had purchased from the defendant a total of eight pills commonly referred to as “T’s & B’s” for a price of $3.50 per pill. She further stated that she had bought this type of drug from the defendant “several times in the past”.
In her confessional affidavit, Ms. Bragan described for the police the location of the drugs. Specifically, she included the fact that the defendant had obtained the drugs from a drawer in the refrigerator located in the kitchen of his apartment.
Ms. Bragan additionally described the defendant as being “a Puerto Rican male in his forties, or at least appearing so.” If this informant’s statement were to be considered in terms of the Aguilar and Spinelli “two-pronged test,” it would meet the challenge. With respect to the basis-of-knowledge portion of the test, Ms. Bragan was speaking from first-hand information. With respect to the reliability or veracity prong of the two-pronged test, clearly from examining the content and the form of her “voluntary confessional affidavit”, Ms. Bragan’s comments were most certainly declarations against penal interest. She not only admitted purchasing narcotics from the defendant, but, in addition, turned over those narcotics which she had just purchased to the police authorities who stopped her. This latter fact was reflected in Officer O’Brien’s supporting affidavit. As has been held in the case of United States v Harris (403 US 573, 583), and in the case of People v Hanlon (36 NY2d 549, 558), such declarations have been found to carry their own “indicia of credibility.” Thus, they have been found sufficient, at least to support a finding of probable causé to search.
INFORMATION PROVIDED BY CONFIDENTIAL INFORMANT
Contained within his affidavit in support of the search warrant, Officer O’Brien alleges the following: “A reliable, confidential informant, who has provided the narcotics unit with reliable information on at least twenty cases in the past and is presently involved with ongoing investigations, has personally observed Mario Maldonado dealing drugs throughout the last few months. This informant also *247 stated the apartment consists of a livingroom, kitchen, bedroom, and bathroom. The basement consists of the laundry area and storage.”
Although it may be true that the bare statement by an affiant that he believed his informant to be truthful and reliable is not sufficient in and of itself to provide a factual basis for crediting the report of an unnamed informant (United States v Harris, supra, at p 579), in this case we do nave more than such a bare assertion. Here the affiant, Officer O’Brien, states that his unnamed informant has provided reliable information in numerous cases in the past and is, in fact, still working for the narcotics unit on narcotics investigations. Although Officer O’Brien does not continue in his affidavit with any mention of the culmination of this informant’s information, i.e., number of arrests, number of convictions, it is inconceivable that this particular informant would continue to be useful to the narcotics unit had the previous information which he had supplied been unreliable or false.
Additional support to the reliability or veracity of this particular informant is found in the fact alleged by Officer O’Brien in his affidavit that he personally had knowledge that the defendant had a previous felony conviction for a drug-related offense and was, in fact, on parole for that conviction at the time this search warrant was obtained. As the Supreme Court stated in Jones v United States (362 US 257, 271, supra), such information is corroborative in nature — that is, there is much less skepticism surrounding an informant’s information than would be the case if the police were not aware of the defendant’s prior, related criminal history.
Further corroboration is found in the fact that Officer O’Brien’s confidential informant describes, in albeit a cursory fashion, the defendant’s apartment. Specifically, the informant described the defendant’s apartment as consisting of a living room, a kitchen, a bedroom and a bathroom and that the basement consisted of a laundry area and storage. This would lead to the conclusion that this confidential informant had, in fact, been inside the defendant’s apartment on at least one occasion.
*248 Once again, then, had this information been put to the Aguilar and Spinelli test, it would have likewise met the challenge.
INFORMATION PROVIDED BY ANONYMOUS CITIZEN INFORMANT
Officer O’Brien in his affidavit alleges the following:
“I have received information from an individual who is not a regular police informant but an ordinary citizen who, owing to fear of involvement or reprisal, wishes to remain anonymous. The said individual told me the following:
“Mario Maldonado who lives at 440 West Taylor Street, Apt. 19, is dealing in drugs. He has been observed on several occasions in the basement area of the building. There is a loose board next to the floor and at times, drugs and hypodermic needles have been hidden behind the board. Two hypodermic needles were found on the basement floor next to this loose board on Friday, 17 September 1982. These hypodermic needles were given to this investigator and turned over to the Syracuse Police crime lab. A copy of this report has been made part of and attached to this application. This citizen also stated Mario Maldonado hides his drugs in his apartment, in the basement area, and in his mailbox.”
Had this information been subjected to the “two-pronged test”, it would not have met the rigors. Prior to the Gates decision (supra), it was impermissible to presume that an informant had first-hand knowledge in the absence of a specific allegation to that effect. (See People v Sutton, 38 AD2d 567, 567-568 [dissent], revd 32 NY2d 923 [citing People v Hendricks, 25 NY2d 129, 133, 136-137].)
As the Spinelli court stated, “In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused’s criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual’s general reputation.” (393 US, at p 416.) Thus, under previous case law, the “basis of knowledge” prong of the test would not have been met. The Gates court, however, in analyzing the anonymous letter found that the accuracy of *249 the information provided therein was such as to lead to the conclusion that the informant had either first-hand knowledge or had obtained the information from someone who had such first-hand knowledge. (See 462 US, at p_, 33 Grim L Rptr, at p 3117.)
This being the case, this information must be considered in the “totality of circumstances” as to whether there existed probable cause and not entirely discounted as a “bald and unilluminating assertion of suspicion” as it would have been in pre-Gates times. (See Spinelli v United States, supra, at p 414 [citing Nathanson v United States, 290 US 41, 46].)
INFORMATION PROVIDED BY AFFIANT PERSONALLY TO EFFECT CORROBORATION
Officer O’Brien in his affidavit made the following assertions: “Your deponent has verified through the postal authorities that Mario Maldonado does presently live at 440 West Taylor Street, Apt. 19. My personal surveillance showed several persons entering Mario Maldonado’s apartment through the backdoor, staying just a few minutes after making a transaction, and leaving. Mario Maldonado is presently on parole for possession and sale of drugs.”
Regardless of whether the previous “two-pronged test” or the new “totality of circumstances” approach were to be used, two elements of this portion of the affidavit should be credited as providing corroboration for the previously discussed elements of the affidavit. Specifically, the allegation that the affiant knew that the defendant was, at that time, on parole for a previous conviction for possession and sale of drugs is corroborative, as is the allegation that the postal authorities listed as the defendant’s address 440 West Taylor Street, apartment No. 19. The latter is corroborative in that it can thus be concluded that the defendant was a nontransient individual.
Under previous case law, information which was as susceptible to innocent interpretation as to guilty was to be discredited. (See People v Elwell, 50 NY2d 231, 237-238 [quoting People v Wirchansky, 41 NY2d 130, 135-136].) Thus, under this analysis, that portion of the affidavit stating that Officer O’Brien had seen several persons entering and leaving the defendant’s apartment after making *250 “transactions” would have been discounted for two reasons: first, that he had no basis for his conclusion that “transactions” were being conducted inside the apartment and second, that people entering and exiting on a frequent basis could be just as indicative of an extremely busy social schedule as it could of the conduct of criminal activity inside the residence. However, the Gates decision {supra) appears to have changed this proposition and, in fact, turned it around. Specifically, the court emphasized facts such as Florida’s reputation for being a source of narcotics and other illegal drugs while apparently ignoring its reputation as a tourist haven. Similarly, it held that the petitioner’s actions were “suggestive of a pre-arranged drug run” while discounting the fact that they were also suggestive of “an ordinary vacation trip.” (462 US, at p_, 33 Crim L Rptr, at p 3117.) Thus, under the Gates standard, even this somewhat innocuous conduct adds to the probable cause determination.
Clearly, under this new and more liberal test of “totality of circumstances”, the search warrant must be upheld as having been based upon probable cause.
With respect to the seizure of the IBM Selectric II typewriter, the defendant alleged during oral argument that, inasmuch as an IBM Selectric II typewriter was not specified among the list of things to be searched for as provided in the search warrant, its seizure was illegal per se. The People responded to this argument by asserting that there was no need for this particular type of property to be named in the search warrant itself since it was seized at a time when the officers were in a place where they were entitled to be — that is, in the defendant’s apartment — and by asserting that the typewriter was in plain view.
Another recent United States Supreme Court decision is helpful in analyzing the plain view doctrine. In Texas v Brown (460 US_, _, n 4, 33 Crim L Rptr 3001, 3003, n 4), the court articulated that the plain view doctrine provides a ground for seizure of an item when an officer’s access to an object has some prior justification under the Fourth Amendment. In writing the court’s decision, Justice Rehnquist quoted the following language from Payton v New York (445 US 573, 587): “ ‘[t]he seizure of property in plain *251 view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity” (Supra, p _, p 3004.) Justice Rehnquist continued by stating that probable cause is a flexible, commonsense standard, requiring merely that the police officer have facts sufficient to warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime. (Supra [citing Carroll v United States, 267 US 132, 162].) Although the Brown case was a case involving the warrantless seizure of drugs from a lawfully stopped automobile, the language of the case certainly is applicable to the circumstances present in the instant case.
As discussed above, the police officers executing the search warrant in this case were in a location in which they were entitled to be for Fourth Amendment purposes. They were in the defendant’s apartment when they observed the IBM Selectric II typewriter. IBM Selectric typewriters are commonly the subject of criminal activity. It is not unreasonable in a case such as this for the police, when observing such a typewriter in the defendant’s apartment, to “ ‘warrant a man of reasonable caution in the belief’ * * * that [this item] may be contraband or stolen property”. (See Texas v Brown, 460 US, at p_, 33 Grim L Rptr, at p 3004.)
The defendant, in citing the case of People v Haas (55 AD2d 683) during oral argument and in a memorandum of law submitted to the court thereafter, asserts that although the typewriter may have been in the apartment at the time, it was not the type of property which was the subject of the search warrant and, therefore, should not have been seized. The Haas case is distinguishable on its facts. In that case, the People were searching specifically for marihuana plants. The property which was seized and found to be inadmissible as outside the ambit of the plain view doctrine were items such as a passport, an envelope containing coins and certain other documents. Clearly, this type of property would not have been found in a location where marihuana plants would have been found, and on that basis was suppressed. Additionally, the Haas court included in its rationale for suppressing these items that *252 they were not of a nature to be considered contraband per se and that the police would, therefore, have to carefully scrutinize them in order to ascertain whether they were, in fact, stolen. Such was not the case here. The IBM Selectric II typewriter was clearly labled “property of Crouse Irving Memorial Hospital” and with its serial number. Clearly then, a reasonable person could assume that the typewriter belonged to Crouse Irving Memorial Hospital and not to the defendant or to anyone, save Crouse Irving Memorial Hospital.
Therefore, under the Brown case (supra) and even under the Haas case (supra), this IBM Selectric II typewriter is not suppressable since its seizure would come within the plain view doctrine.
The fact that the return contained all the items of property seized, with the exception of the IBM Selectric II typewriter, is not grounds for its suppression. The return of a search warrant is a ministerial act and failure to execute a return is not fatal. (People v Ciccarelli, 104 Misc 2d 287, 290.)
As such, the search of the defendant’s residence, the basement and his mailbox on September 24, 1982, was valid as having been based on a valid, probable cause grounded search warrant. Any items seized pursuant to that warrant or in plain view during its execution are admissible at trial.