(May 19, 1992)

1    JOSEPHINE NUCCIO et al., Respondents, v CATHERINE CHOU et al., Appellants, et al., Defendants.—Judgment, Supreme Court, New York County (Carmen Beauchamp Ciparick, J.),

entered November 28, 1990, which, after a jury trial, awarded the plaintiffs the principal sum of $662,355 in compensatory damages, reduced by pre-trial settlements totalling $573,125, and $500,000 in punitive damages against the defendant Catherine Chou, reversed, on the law and the facts, the causes of action alleging that the defendants were severally liable are dismissed as to the defendant Catherine Chou, and a new trial is ordered on the remaining portions of the complaint, without costs; and appeal from an order of the same court, entered April 15, 1991, which, *inter alia,* denied the defendants' post-trial motion to set aside the verdict, dismissed as moot.

The record fails to support the jury's apportionment of 67 percent liability to the defendant Catherine Chou. In addition, several other errors committed during the course of this trial mandate a reversal and new trial.

The plaintiffs alleged that Mrs. Chou deliberately failed to support their building while performing excavation work, in order to cause substantial damage so that the plaintiffs would be forced to sell their property to her. They maintain on appeal that rather than being the unsophisticated, passive owner the defense makes her out to be, Mrs. Chou, in reality, was the force behind the attempt to take over the plaintiffs' property.

However, contrary to the protestations of the plaintiffs and the conclusion reached by the dissent, the record reveals that Mrs. Chou was not "involved at all critical stages of the construction project," nor was her presence, interest in and control over the project "pervasive." Instead, the record reveals that Robert Chou was in control and that property owned by the couple was merely placed in Mrs. Chou's name. Robert Chou first brought the property to his wife's attention, after he discussed the purchase price with the seller. Although Mrs. Chou once drove by the property prior to purchasing it, she never once visited the site during construction, nor did she ever look at photographs of the construction as it progressed. The plaintiff, Josephine Nuccio, never saw Mrs. Chou prior to trial and testified that Robert Chou was the person who purportedly made the overtures to her and her sister concerning the purchase of the Nuccio property.

Robert Chou, who has a masters degree in mechanical engineering, guaranteed the construction loan the bank made to his wife and had authority to draw checks on that account. While Mrs. Chou was the sole stockholder of Hiyee Realty, a company incorporated by an attorney chosen by her husband,

she had no real estate license. She testified that she never worked in the real estate business, but instead just owned property.

Robert Chou hired the architect, the excavator, the companies that did the underpinning, the floating and the concrete work on the project and paid them for their services. Mr. Chou testified that in general, his wife relied on him to make decisions concerning the purchase and development of their properties. He never discussed with her the hiring of personnel on the project or problems that arose. Mrs. Chou testified that she never discussed summonses issued by the City for excavation violations with her husband because she didn't want to hear about them. None of the workers on the project testified to having had any discussions or meetings with Mrs. Chou. Their sole contact on the project was Robert Chou. While Mrs. Chou never visited the project, Mr. Chou was at the construction site on an almost daily basis.

The jury's determination to assess a proportionate share of responsibility against Mrs. Chou reflecting independent, non-vicarious fault on her part is against the weight of the credible evidence, in light of the fact that she delegated all responsibility for the project to Hiyee Construction, not only by contract but in actual practice. The evidence simply fails to support the conclusion that Mrs. Chou was 67 percent responsible for the collapse of the building while the general contractor, the architect and the subcontractors, who performed the actual work on the project, were assessed with only 33 percent of the responsibility, and while Hiyee Construction and its principal, Robert Chou, who hired the various contractors, were assessed with only 1 percent of the responsibility. Moreover, there was no proof of a conspiracy since the plaintiffs failed to demonstrate that Mr. Chou was carrying out Mrs. Chou's instructions. There was no evidence to support the plaintiffs' theory that Mrs. Chou ratified, participated in, ordered or was even aware of Mr. Chou's approaches to the plaintiffs or was otherwise involved in any purported scheme to force them from their home. Accordingly, those portions of the causes of action alleging that the defendants were severally liable are dismissed as to Mrs. Chou.

With regard to Hiyee Realty, the court charged the jury that it was the plaintiffs' contention that Hiyee Realty, through Mrs. Chou, misrepresented to various contractors and the Department of Buildings, that it was the actual owner of 259-263 Elizabeth Street and that Mrs. Chou "sought to limit her liability by entering into certain contracts, and she fur-

ther permitted her husband, Robert Chou, to hold himself out as president of Hiyee Realty when he was not." The claim was not supported by legally sufficient evidence and was irrelevant to the charges alleged. There was no claim that these representations as to the ownership of the property were made to the plaintiffs or that they relied on these representations to their detriment. The charge provided by the court, however, was highly prejudicial to Mrs. Chou, since it implied that using a corporation to insulate an individual from personal liability was improper. It is well-settled that a corporation may be established for the very purpose of enabling the owners of a business to escape personal liability (see, *Walkovszky v Carlton,* 18 NY2d 414; *Bowles v Errico,* 163 AD2d 771).

Further error was committed by the trial court's denial of the defense request for a missing witness charge as to Cira Nuccio, Josephine Nuccio's sister, to whom Robert Chou allegedly made a request to purchase her property. The plaintiffs partly based their claim that Mrs. Chou purposely caused their building to collapse in order to coerce them into selling their property on this purported conversation between Cira Nuccio and Robert Chou. Since Mr. Chou denied ever having such conversation, and since Cira Nuccio was available and knowledgeable about a material issue about which she could provide non-cumulative testimony, a missing witness charge should have been provided in accordance with the defense request (*People v Gonzalez,* 68 NY2d 424). The error was not cured by permitting defense counsel to comment on the failure to call the witness in summation (*Safdie v City of New York,* 138 AD2d 361).

The court also improperly permitted counsel for the plaintiffs to ask Mr. Chou, on direct examination, whether he did "anything to protect the Nuccio property after it collapsed," to which he replied that he took steps to shore up the walls. The questioning improperly created the inference that these steps should have been taken prior to the collapse (see, Richardson, Evidence § 168 [Prince 10th ed]).

Certain errors committed by counsel for the plaintiffs added to the unfairness of these proceedings. Counsel made himself an unsworn witness and attempted to vouch for the credibility of his clients (see, *Sanchez v Manhattan & Bronx Surface Tr. Operating Auth.,* 170 AD2d 402). He also implied that defense counsel made up the defense raised by the defendants, injected racial overtones into the case, labeled the defendants' expert a hired gun and insinuated that the defense experts

were unworthy of belief because they were being compensated *(see, Berkowitz v Marriott Corp.,* 163 AD2d 52; *La Russo v Pollack,* 88 AD2d 584; *Caraballo v City of New York,* 86 AD2d 580).

Based on the foregoing, the judgment must be reversed and a new trial ordered. Concur—Murphy, P. J., Sullivan and Rosenberger, JJ.

Kassal, J., dissents in a memorandum as follows: Plaintiffs Josephine Nuccio and Cira Nuccio* were tenant-owners of a building located at 265 Elizabeth Street in lower Manhattan, which sustained severe damage when it partially collapsed due to excavation work on an adjoining property, 259-263 Elizabeth Street. Defendant-appellant Catherine Chou ("Mrs. Chou") is the undisputed owner of the adjoining property, which was undergoing construction for the purpose of erecting a condominium. Mrs. Chou is also the sole shareholder of defendant-appellant Hiyee Realty Corp. ("Hiyee Realty"), an entity that was, throughout this project, repeatedly held out as the owner of the construction site. In agreements entered into with defendant Salvatore Russo, Inc., which performed the excavation work that led to the collapse of plaintiffs' building, the signatory for Hiyee Realty was Mrs. Chou's husband, defendant Robert Chou ("Mr. Chou"), who is listed therein as Robert "Chew".

Mr. Chou is the sole owner and principal officer of defendant Hiyee Construction Corp., which entered into a contract with Mrs. Chou (executing as "Katherine" Chou), to act as general contractor for the condominium project. Prior to trial, all defendants, with the exception of the two appellants, Mrs. Chou and Hiyee Realty Corp., reached a settlement with plaintiffs.

At trial, the undisputed evidence revealed that on July 7, 1986, plaintiffs' building collapsed as a result of the excavation work being done on Mrs. Chou's property, which extended beyond the statutory limitations for depth, and which was performed without the underpinning required to protect plaintiffs' adjoining property. The trial evidence revealed that property belonging to other adjoining landowners, former Congresswoman Geraldine Ferraro and her husband, John Zaccaro, had been extensively underpinned in preparation for the excavation work.

---

* The causes of action on behalf of plaintiffs Frank Nuccio and Charles Nuccio were discontinued after pre-trial settlements were reached with several defendants.

Plaintiffs' theory at trial was that Mrs. Chou had deliberately failed to provide underpinning in an attempt to force them to sell, so that she could develop both properties. In support of this claim, Josephine Nuccio ("plaintiff") testified that Mr. Chou asked whether her property was for sale on three separate occasions. The first conversation took place after some initial damage, manifesting in cracked walls, had been caused to the building by the construction work. Another occurred shortly after the building collapsed, when plaintiff stood outside, surveying the damage amidst a gathering crowd. Plaintiff testified that Mr. Chou approached her and said, "Now will you sell me your property?" The third conversation was one which took place between Mr. Chou and her sister, plaintiff Cira Nuccio, which plaintiff testified included yet another offer to purchase their property. Each time the offer was made, Mr. Chou was told that the home in which plaintiffs had lived their entire lives would not be sold.

In further support of their theory that Mrs. Chou wished to acquire their property for the purpose of developing another condominium in the area, plaintiffs point to testimony, given by Daniel Lane, defendants-appellants' expert witness on real estate appraisals, which revealed that, within months of the collapse of plaintiffs' house, Mrs. Chou purchased property a few blocks away and developed a ten-story condominium.

Defendants-appellants' engineer, Alvin Fischer, testified at trial that the lack of underpinning to plaintiffs' premises was not in compliance with the plans he had executed for the project. Fischer further testified that, unbeknownst to him, his partner had been prevailed upon by Mr. Chou to falsely certify to the Department of Buildings that the underpinning had, in fact, been completed. Fischer further testified that he "may have at one time, yes", advised Mr. Chou that plaintiffs' middle building was "rickety".

On appeal, defendants contend that the jury's verdict was inconsistent with the trial court's charge, contrary to the weight of the credible evidence, and the product of various errors by the Trial Judge, as well as improprieties on the part of plaintiffs' counsel. Having reviewed the evidence in the light most favorable to the prevailing plaintiffs, as indeed this Court must (Matter of Kornblum Metals Co. v Intsel Corp., 38 NY2d 376, 379), I conclude that there is no basis for disturbing this verdict and, accordingly, I dissent.

The issue of whether a jury verdict is against the weight of the evidence is, unlike the question of whether a jury verdict

is insufficient as a matter of law, a discretionary and factual determination *(Cohen v Hallmark Cards,* 45 NY2d 493, 498-499; *Nicastro v Park,* 113 AD2d 129, 132). Since great deference is accorded the fact-finding determinations of the jury, the standard has evolved that a jury verdict should not be set aside as against the weight of the evidence unless it could not have been reached on any fair interpretation of the evidence *(Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643; *see also, Diaz v Lenox Hill Hosp.,* 173 AD2d 165).

Applying these principles to the case at bar, I note first, with respect to the jury's apportionment of 67 percent liability against Mrs. Chou, that the record contains ample data by which the jury could reasonably find that this defendant was extensively involved at all critical stages of the construction project. For example, in the application for a permit to perform the excavation work, which was filed with the Department of Buildings, Mrs. Chou swore that she was both the general contractor and the person who would supervise the construction work. Her status as such, which was notarized on March 26, 1986, was reaffirmed shortly before the building collapse when her husband, Mr. Chou, submitted an application for a permit to the Department of Buildings on June 19, 1986, which also certified that Mrs. Chou was general contractor and supervisor of the "entire work" being conducted on the premises. It was upon these very representations that the Department of Buildings issued the permits required to carry out the construction work.

The evidence adduced at trial further established that all realty was held in Mrs. Chou's name, while nothing was placed in the name of her husband, and that she made all the decisions with respect thereto. In addition, there was evidence of a secret indemnification agreement entered into by Mr. and Mrs. Chou, pursuant to which Hiyee Construction Corp., controlled by Mr. Chou, would indemnify Mrs. Chou for any damage occurring during the Elizabeth Street excavation. In this agreement, executed ten days before Mrs. Chou certified to the Department of Buildings that she was the general contractor, Hiyee Construction Corp. was designated general contractor.

In light of this record indicating the pervasive presence of Mrs. Chou, and her interest in and control over the project, the jury could reasonably attribute to her the greatest degree of fault *(see, O'Boyle v Avis Rent-A-Car Sys.,* 78 AD2d 431, 438-439). In this context, I note that matters of credibility are particularly within the province of the jury, and that it is

free, in exercising its fact-finding function, to conclude that a party was possessed of certain knowledge on the basis of circumstantial evidence, and despite the denial of the party charged which such knowledge (see, Dominguez v Manhattan & Bronx Surface Tr. Operating Auth., 46 NY2d 528, 534). Here, the jury could reasonably interpret the evidence as establishing that Mrs. Chou, a real estate developer engaged in building condominiums, wanted to purchase plaintiffs' property for that purpose, was aware that the manner in which the work was being performed could damage plaintiffs' building, and took measures to insulate herself from liability in the event of that occurrence.

Nor was the determination by the jury that Mrs. Chou was 67 percent liable inconsistent with the trial court's charge. The court charged that, as owner of the site undergoing construction, Mrs. Chou could be held responsible for the damage if she knew or, in the exercise of reasonable care, could have known, that the excavation being done on her property and by her agents could result in injury to the adjoining property. The IAS court further instructed the jury that Mrs. Chou could be charged with actual or constructive notice of a dangerous condition if "a reasonably prudent owner by its employees or agent in the exercise of reasonable care would have notice of the unsafe condition".

In addition, the trial court charged that Mrs. Chou could be held vicariously liable for the acts of Mr. Chou, if the jury found that he was acting as her agent or as agent of defendant Hiyee Realty, or both, and that vicarious liability could further be imputed to Mrs. Chou for acts of the various subcontractors, performed at her direction, again, if it were found that she had actual or constructive notice of a dangerous condition which she "should have reasonably anticipated from the nature of the work * * * could result in damage to others." Nothing in these instructions, which were proper and complete, was inconsistent with the jury's allocation of 67 percent liability to Mrs. Chou (see, PJI 2:113, 2:255).

The IAS court's charge with respect to the punitive damages similarly enjoined the jury that Mrs. Chou could be found liable "only if you accept plaintiffs' theory that Robert Chou was acting as [her] agent * * * and/or was the employee or agent of Hiyee Realty, and the actions of both Chous were willful, deliberate, wanton, reckless and malicious." Further, the court charged that "punitive damages may be awarded against a vicariously liable defendant provided there is proof

that such defendant authorized, condoned, or ratified the actor's conduct."

In short, the charge addressed the central premise of plaintiffs' case, namely that Mrs. Chou and her realty company, Hiyee Realty Corp., could be held responsible for the damage to plaintiffs' property, and punitive damages assessed, if she were the power behind everything occurring at the construction site. This was a factual question for resolution by the jury. On the basis of the certificates Mrs. Chou filed with the Department of Buildings, her corporate and personal connections with Hiyee Realty, Hiyee Construction Corp., and Robert Chou, and her exclusive ownership of all the properties, the jury could reasonably have attributed to Mrs. Chou the control, authority, direction and scienter that would warrant the greatest percentage of liability.

Defendants further raised the issue of error in the IAS court's charge with respect to the proper measure of damages. At trial it was the plaintiffs' position that damages should be measured by the rental value of the property or the cost of the reparation work, while the defendants argued that damages should be measured by the fair market value of the property or the costs of repairs, whichever was less. Each side retained experts to testify in support of its position. The IAS court permitted the jury to hear the testimony proffered by both sides, and allowed defense counsel to argue on summation, pursuant to the defense expert's theory, that the destruction of plaintiffs' home caused no damages whatsoever, because the property was more valuable as a redevelopment site than a residence. In its charge, the IAS court instructed the jury as follows: "If you find plaintiff is entitled to recover you must render a verdict in a sum of money which will justly and fairly compensate the plaintiffs for their losses proximately resulting from the injuries that they sustained, including cost of repairs, loss of use and moving and storage expenses."

The record reveals no error in the IAS court's charge on the proper measure of damages. It has long been the law that "[w]here the injury is to a building and is one which admits of reparation at a reasonable cost, and this would be the ordinary method of remedying the injury, the cost of the reparation would generally measure the depreciation and the indemnity to which the owner would be entitled" (Slavin v State of New York, 152 NY 45, 48; Taylor v Leardi, 120 AD2d 727, 728). Moreover, it is clear on this record that defendants would not have been able to meet their burden of proving a lesser amount than that claimed by the plaintiff would ade-

quately compensate for the loss *(Jenkins v Etlinger,* 55 NY2d 35, 39; *Property Owners Assn. v Ying,* 137 AD2d 509, 510). It simply defies logic to conclude, as did defendants' expert on diminution of market value damages, that plaintiffs suffered no losses whatsoever, despite the severe damage to their home, because the property was worth $435,000 when valued as a redevelopment site, but only $265,000 in its pre-damage residential and commercial usage. By failing to produce any evidence that the diminution in market value method of measuring damages would adequately compensate plaintiffs *(see, Jenkins v Etlinger, supra),* defendants provided no basis for a charge to this effect.

A further issue raised on appeal was the propriety of the punitive damages assessed against Mrs. Chou. Defendants' counsel failed to object to the court's charge with respect thereto and, thus, did not preserve the issue for appellate review *(Passantino v Consolidated Edison Co.,* 54 NY2d 840, 842). Moreover, an examination of the charge, which is based upon PJI 2:278, leads to the conclusion that it provided the appropriate guidelines for the jury to determine whether or not punitive damages were warranted. Unlike the circumstances presented in *Loughry v Lincoln First Bank* (67 NY2d 369, 375), where the trial court failed to instruct the jury on the need to determine whether or not the agent for the bank was a " 'superior officer' ", I am persuaded that the record before us adequately supports the claim that Mrs. Chou was the moving force behind the commercial enterprise that resulted in the collapse of plaintiffs' home.

For example, in addition to the factors discussed above, it is undisputed that Mrs. Chou purchased the parcel and obtained the construction financing. Mr. Chou conceded that the four other projects on which he worked were done on behalf of Mrs. Chou, and Mrs. Chou herself admitted that she owned all the properties, that her husband owned nothing, and that she was the one who made all decisions. The evidence was sufficient for the jury to find that Mrs. Chou was desirous of forcing plaintiffs to sell their property, and that she did so by using Hiyee Realty, Hiyee Construction Corp. and Mr. Chou in an attempt to shield her from liability. Both Mr. and Mrs. Chou engaged in what appears to be a very deliberate scheme to obfuscate the true identity of the owner of the premises.

All of these machinations, taken together with the evidence of repeated offers to purchase plaintiffs' property, made through Mr. Chou, were before the jury to consider, weigh, and accept or reject. On the basis of this record, I cannot

accept a conclusion that the jury's award of punitive damages could not have been reached by a fair interpretation of the evidence *(see, O'Boyle v Avis Rent-A-Car Sys., supra; Taype v City of New York,* 82 AD2d 648). Despite conflicting evidence in this regard, the jury's determination was one which could reasonably have been reached *(Harris v Armstrong,* 97 AD2d 947, *affd* 64 NY2d 700).

With respect to the balance of defendants' claims on appeal, including those addressing some questionable tactics and comments by plaintiffs' attorney, I believe that nothing therein is sufficient, either individually or cumulatively, to rise to the level of error mandating reversal *(see, e.g., Caraballo v City of New York,* 86 AD2d 580; *Berkowitz v Marriott Corp.,* 163 AD2d 52). Rather, it is my view that the verdict was not affected and that, in light of the evidence presented, substantial justice was done *(Matter of De Lano,* 34 AD2d 1031, *affd* 28 NY2d 587; *Kimberly-Clark Corp. v Power Auth.,* 35 AD2d 330, 335; 4 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 4404.08, 4404.09).