OPINION OF THE COURT
Lorraine S. Miller, J.
This case epitomizes the difficulties generated by the nondis *879 closure of pretrial statements, in violation of the clear mandate laid down by the Court of Appeals in its 1961 landmark decision in People v Rosario (9 NY2d 286). Reaffirming its commitment to the principles set forth in Rosario and its progeny (see, e.g., People v Jones, 70 NY2d 547; People v Ranghelle, 69 NY2d 56; People v Perez, 65 NY2d 154), the Court of Appeals has directed that the defendant’s 1989 murder conviction be remitted to this court for a hearing to determine whether a police document, which was produced for the first time at the Appellate Division level, constituted Rosario material (see, People v Young, 79 NY2d 365).
The ramifications of this inquiry are significant for the conviction must be set aside and a new trial conducted if the document contains statements of a prosecution witness who testified at the 1989 trial. In addition, this inquiry gives rise to a question of first impression in this State, namely, who bears the burden of establishing whether a document’s contents are attributable to a prosecution witness?
The ambiguous document in question, entitled an "unusual occurrence report addendum”, was signed by Sergeant Arthur Maisano who did not testify at the murder trial. The document reads: "Further investigation at the scene by the investigating officer revealed a mark around the neck of the victim and similar marks about the victim’s body, on the arms and legs indicative of rope burns which may indicate that the victim was bound and possibly strangled to death. Canvass of area conducted with negative results. Investigation is continuing, pending results of autopsy and fingerprint identification of the deceased through B.C.I. Family to be notified pending these results. Case continuing.” (Emphasis supplied.) The form upon which this statement was transcribed noted that: "Only one copy shall be prepared and forwarded in a sealed envelope marked * * * Confidential Supplementary Information.”
Although intrigued by the curious circumstances surrounding the belated revelation of the addendum as well as its clandestine origins, the task assigned to this court is to determine whether the information contained therein was derived from statements made by either of the two police witnesses who testified at trial: Detective Lawrence Daniel or Police Officer Ralph Serra. Since neither party contends that Police Officer Serra provided the critical information, the dispositive question is whether Detective Daniel may similarly be excluded as the "source”.
*880 I. THE HEARING
On May 21, 1992, the prosecution produced the author of the document, former Sergeant Arthur Maisano, who testified that the information concerning the condition of the deceased’s body had been supplied by one of two crime scene detectives, whose name he could not recall. He stated that he remembered details of ligature marks around the deceased’s neck and marks on the deceased’s arms and legs, based upon what the crime scene technicians had "called out” when they opened the plastic bags in which the body had been wrapped and thoroughly taped, from head to toe. Although Maisano also intimated that the information had been derived, in part, from his own observations at the scene, he later testified that he had not been referring to himself when he used the phrase "[further investigation by the investigating officer”.
Sergeant Maisano admitted that he took no notes at the scene. Detective Daniel, on the other hand, took contemporaneous notes, which he later transposed onto DD-5 reports. Indeed, Maisano acknowledged that certain DD-5’s were completed by Daniel and placed on his desk on the same evening the "unusual occurrence addendum” was prepared. Maisano testified, however, that he did not review the DD-5’s until approximately one month later.
During cross-examination, Maisano conceded that he had discussed the case with the District Attorney’s office as well as with Detective Daniel and that he was aware that Mr. Young’s murder conviction would be set aside if he attributed the statements in the "addendum” to Daniel.
The prosecution also called former Detective Lawrence Daniel as a witness. Daniel testified that the crime scene technicians had opened the body bag "completely” and had photographed their findings. Daniel had remained at the scene, after Sergeant Maisano left, to conduct "further investigation”. He returned to the precinct that evening to complete his reports and "assumed” that he spoke with Maisano, although he had no independent recollection of any conversation. His faulty memory notwithstanding, Daniel firmly denied having provided Maisano with the critical information and, instead, echoed the assertion that it was from crime scene personnel.
Dissatisfied with the responses elicited by the People and mindful of the important legal principles at stake, this court, by order dated June 4, 1992, directed the prosecution to *881 produce, as court witnesses, the crime scene detectives alleged to have opened the plastic bags in which the body had been found. Concerned that the testimony of previous witnesses may have been "affected” by their knowledge of the potential consequences attending this inquiry, the order provided that the District Attorney was to "refrain from interviewing or otherwise discussing this matter with the witnesses”.
Although the continued hearing was to be conducted on June 17, 1992, the People neither produced the witnesses nor provided a satisfactory excuse therefor. Because the truth-finding process is of paramount importance to this court, the People were granted a second opportunity to comply with the June 4th order and the hearing resumed on August 19,1992.
II. THE CONTINUED HEARING[1]
The testimony of Frank Gargano, one of the responding crime scene detectives, proved to be conclusive with respect to the credibility of the two prior witnesses. Unlike the previous witnesses, Gargano had not been apprised of the reason for this inquiry or the possible outcome. After being shown photographs he had taken at the scene, Gargano stated: "Well, apparently this was a pretty brief case from my end because * * * the M.E. wanted to examine the body pretty much intact”.
Gargano indicated that the Medical Examiner was responsible for conducting further investigation and that the role of the crime scene unit was limited since the body had to be removed in the condition in which it was found. His forensic report, which was admitted into evidence, stated: "Responded to the above location to photograph the area where the deceased was discovered in plastic bags at a dump site. There *882 were ligature marks on the neck of the deceased, but the rest of the body was left undisturbed as per M.E. directions.” (Emphasis supplied.)
The crime scene photographs corroborate that the plastic body bags had not been opened completely and that only the head and neck area had been exposed. Indeed, Gargano concluded his testimony by stating, unequivocally, that he did not photograph the arms and legs of the deceased because he never observed the condition of the arms and legs. Thus, there was no way for him to have "called out” information regarding the deceased’s extremities, as alleged by Maisano and Daniel.
III. FINDINGS OF FACT
Many years ago, the Court of Appeals recognized that: " 'A remand with the benefit of hindsight derived from an appellate court opinion offers too facile a means for establishing [compliance with the law] after the event’ (People v Hendricks, 25 NY2d 129, 138). Tailoring the evidence at the rehearing to fit the court’s established requirements, whether done unconsciously or otherwise, would surely be a considerable danger.” (See, People v Havelka, 45 NY2d 636, 643.)
Upon careful reflection, it is the opinion of this court that such a danger existed in this case and that the testimony of the prosecution witnesses, particularly Sergeant Maisano, was indeed "tailored” to avoid a reversal of defendant’s conviction. In arriving at this determination, this court cannot ignore the fact that Maisano had discussed the case with the District Attorney’s office and with Daniel and was aware of the repercussions of attributing the statements to Detective Daniel (i.e., the Rosario violation). Thus, the prosecution witnesses were in a position to conform their testimony accordingly.
In addition, Sergeant Maisano could not convincingly account for his use of the definite article "the” investigating officer if, in fact, the information was derived from a crime scene detective and his independent observations. When confronted with this discrepancy, Maisano excluded himself as "the investigating officer”, leaving an unidentified crime scene technician as the sole source. It would appear from the totality of circumstances and the context in which it was written, that the phrase "the investigating officer” referred to a particular individual, not a collateral, unidentified source. Thus, Maisano’s explanation seemed tenuous, at best.
*883 The efforts of this court, in directing the production of the crime scene detectives, ultimately proved fatal to the People’s case. An integral part of this Rosario dispute concerns the revelation of "marks * * * on the [deceased’s] arms and legs, indicative of rope burns”. Frank Gargano (who had not been advised of the purpose of his appearance), plainly stated that the crime scene technicians did not open the plastic body bag beyond the head and neck area and that he never observed the condition of the arms and legs of the deceased. He also testified that he left the scene, upon completing his photographic duties. Independent, undisputed documentary evidence establishes that the crime scene detectives completed their assignment at 16:30 p.m. Detective Daniel’s DD-5 report indicates that the body bag was not fully opened until 17:45 p.m. Thus, the credible evidence overwhelmingly establishes that the arms and legs of the deceased had not been exposed until an hour and 15 minutes after crime scene personnel had departed. Accordingly, a crime scene detective could not have called out the critical information regarding rope burn marks on the deceased’s arms and legs and, therefore, could not have been "the investigating officer” referred to in the "addendum”.
In contradistinction, Detective Daniel, according to all of the witnesses, was considered "the” officer, assigned to lead this investigation. Daniel was responsible for continuing the investigation pending the results of the autopsy, for obtaining any fingerprint identifications and for notifying the family of the deceased; activities which were mentioned in the remaining portion of the "addendum”. Maisano, nevertheless, insisted that he did not rely upon any statements of Daniel, but upon his general knowledge of standard operating procedure. This court is hard-pressed to believe that "secret” information, important enough to be brought to the attention of only high-ranking police officials, was attributable to "common practice” rather than a specific and accountable source. Instead, it appears that Maisano deliberately avoided attributing any of the information to Daniel because he was aware of the inevitable result of such a concession.
IV. CONCLUSIONS OF LAW
The determination that Sergeant Maisano’s testimony was implausible and that a crime scene detective could not have been "the investigating officer” does not end this inquiry, for *884 although it appears that the prosecution witnesses were less than candid when they denied that it was Daniel, the record, nevertheless, remains inconclusive as to the actual source of the information. The absence of attribution poses an interesting question with respect to the dispositional responsibilities of this court. The Court of Appeals specifically declared that if the addendum is found to contain a statement of a testifying witness, a new trial must be ordered. Conversely, if it is determined that it did not contain statements of a witness, a new trial is unnecessary. No provision was made for the situation now encountered. This court believes that the appropriate remedy hinges upon an analysis of the burden of proof and whether the parties sustained their respective burdens.
Generally, a determination of where the burden of proof rests depends upon the facts to be proved, the nature of the allegations, who is making the allegations and, above all else, considerations of fairness and convenience (see, Fisch, New York Evidence § 1087, at 611 [2d ed]).
The Court of Appeals, in remitting this case, noted that there continues to be a " 'strong presumption of * * * discoverability’ ” (see, People v Young, 79 NY2d 365, 369, supra, citing People v Ranghelle, 69 NY2d 56, 63), thereby suggesting that the People should be required to come forward with credible evidence to rebut the presumption. Moreover, it is clear from the Court’s decision, that the defendant, who alleged the existence of a Rosario violation, did meet a threshold burden of establishing that "the investigating officer” could reasonably have been a testifying witness, i.e., Detective Daniel. Indeed, the case was remitted to this court because the defendant made such a prima facie showing. Since the defendant had alleged that he was aggrieved by the nondisclosure of the document, it was reasonable to require him to bear the burden, in the first instance, of demonstrating, prima facially, that a breach of the Rosario rule may have occurred.
Drawing upon an approach employed in other criminal contexts, once a defendant makes out a prima facie case, the burden shifts to the People to come forward with sufficient evidence to rebut defendant’s allegations. This procedure is most commonly associated with pretrial suppression motions (see, People v Berrios, 28 NY2d 361, 366; People v Chipp, 75 NY2d 327, 333), but is also utilized in assessing requests for missing witness instructions (see, People v Gonzalez, 68 NY2d 424, 427), determining whether peremptory challenges are exercised for discriminatory purposes (see, Batson v Kentucky, *885 476 US 79, 97; People v Scott, 70 NY2d 420, 423) and resolving statutory speedy trial claims (see, People v Santos, 68 NY2d 859, 861; People v Berkowitz, 50 NY2d 333, 349).
With reference to Rosario disputes, where the People maintain that a document is not discoverable because it does not contain a statement of a witness, it makes particular sense to require that they come forward with evidence to substantiate this assertion since the People generally have control over the critical information bearing on this issue (see, People v Rosa, 65 NY2d 380, 386 [burden remains with the "one who is best and most logically able to prove (the) allegation(s)”]). Indeed, the Court of Appeals, in People v Jones (70 NY2d 547, 550), tacitly acknowledged that the defense is at somewhat of a disadvantage with respect to the enforcement of discovery rights since the People have possession of the material and defense counsel often has "no knowledge * * * and no other means of obtaining it”. For this reason, the Court of Appeals, in no uncertain terms, has placed the burden on the People to identify, discover, locate, preserve and produce Rosario material (see, People v Martinez, 71 NY2d 937; People v Novoa, 70 NY2d 490; People v Ranghelle, 69 NY2d 56, supra). It has also become increasingly apparent that any attempt to dilute, disregard or circumvent this mandate will not be tolerated. To require the People to demonstrate that material does not qualify under Rosario, after the defendant has made out a prima facie case to the contrary, is but a logical extension of the line of decisions issued thus far.
More fundamentally, however, this court’s ruling regarding the burden of proof comports with the principles of fairness and justice upon which Rosario is premised. As it stands, the defense, more often than not, receives Rosario material at the last possible moment due to neglect, inadvertence, the shuffling of trial assistants from part to part, their lack of familiarity with files, lost files and a host of other systemic problems, heard by this court in case after case, all of which tend to defeat the rights of defendants and delay the prompt resolution of cases. Were this court to formulate a rule which placed the burden of attributing statements exclusively upon the defense, such a burden would be virtually insurmountable, as this case so vividly demonstrates. Moreover, the People would be in a position to immunize themselves from discovery obligations by withholding the identity of the source, by failing to specify the source or by proclaiming that statements are unattributable, without having a correlative duty to estab *886 lish the truth of their assertions. In contrast, a rule which shifts the burden to the People, upon a proper challenge by defendant, is not only practical and fair but also ideologically consistent with existing precedent[2] and the strong presumption of discoverability.
If, of course, the People sustain their burden of going forward with sufficient evidence, the defendant would bear the ultimate burden of establishing each essential fact in support of his claim. In this ease, however, the court need not address this point because the People never satisfied their obligation of presenting credible evidence as to the identity of the "investigating officer”.
As noted previously, the testimony of Maisano and Daniel was substantially undermined by undisputed documentary proof and by the testimony of court witness Frank Gargano. Although this court, by ordering that the hearing be reopened, expressed its concern as to the veracity of the testimony that crime scene personnel were responsible for the disputed information, the prosecution was content to rely on the record and made no attempt to locate, identify or discover the true source, once the crime scene detectives were effectively excluded (see, People v Ranghelle, 69 NY2d 56, supra). Since the People did not sustain their burden of rebutting the presumption of discoverability and defendant’s prima facie allegations that the material qualified under Rosario (see, People v Burton, 130 AD2d 675), this court is constrained to direct that the conviction be set aside and a new trial conducted (see, People v Young, 79 NY2d 365, supra).

. At the outset of the hearing, the defense, at the suggestion of the court, offered into evidence a copy of the "Detective Guide”, which delineates the rules, regulations and policies of the New York City Police Department regarding the manner in which an investigation is to be conducted. Significantly, the Guide provides that the "Detective/Investigator” is responsible for, inter alla, conducting preliminary searches for physical evidence, making notes, directing and assisting crime scene technicians and conferring with the "Supervisor”. The court is of the view, and the Guide tends to confirm, that the phrase "the investigating officer” is a term of art which pertains to a specific individual entrusted with the responsibility of performing certain duties. In this case, there is no doubt that Lawrence Daniel was the "Detective/Investigator” and that Sergeant Maisano was his "Supervisor”. The Guide, while not conclusive proof of the meaning of the words in the "addendum” was, nevertheless, instructive.

. This court is not unmindful of the recent Second Department decision in People v Miller (183 AD2d 517), which bears some factual resemblance to this case, but which was ultimately decided on hearsay grounds not relevant here (see, People v Williams, 165 AD2d 839, affd 78 NY2d 1087).