(June 26, 2003)

■ CARLOS TORRES, Appellant, v CITY OF NEW YORK et al., Respondents. JULIO GARCIA, Plaintiff, v CITY OF NEW YORK et al., Defendants. [762 NYS2d 67] —Order and judgment (one paper), Supreme Court, Bronx County (Janice Bowman, J.), entered on or about August 21, 2001, which, to the extent appealed from, granted defendants-respondents' motion for judgment notwithstanding the verdict and dismissed the complaints against them for failure to comply with Administrative Code of the City of New York § 7-201 (c) (2), unanimously reversed, on the law, without costs, defendants-respondents' motion denied, the verdict reinstated and the matter remanded for a trial on damages.

Plaintiff Carlos Torres (Torres) commenced an action against the City of New York and the New York City Department of

Transportation (City) for personal injuries sustained on November 20, 1993 when the car he was driving hit a pothole in the street, causing him to lose control of the car and collide with a tree. Plaintiff's passenger, Julio Garcia (Garcia), commenced a separate action against Torres, the City and Santa Sanchez, the owner of the vehicle driven by Torres. The actions were consolidated for trial.

At trial, Torres and Garcia testified that while returning home from shopping for cassette tapes, they approached the intersection of Jerome and Anderson Avenues and moved into the right lane in order to turn right onto Woodycrest Avenue. Torres was driving at about 35 miles per hour when he saw a hole in the road. The asphalt had worn away, exposing underlying cobblestones, and a depression where some cobblestones were missing. Unable to brake in time, the front left tire entered the pothole, resulting in Torres's head striking the door with sufficient force to cause him to pass out. According to Garcia, Torres slumped forward on the accelerator, causing the car to speed up to 50 or 60 miles per hour. The car swerved to the left, crossed two northbound lanes and the sidewalk, and struck a tree. Torres was revived after the collision while Garcia passed out.

Torres and Garcia both testified that they had traveled through the same intersection many times over the preceding five years and that the roadway "always" had places where the asphalt had worn away, exposing the underlying cobblestones. Garcia also testified that he had sometimes observed holes caused by the missing cobblestones.

Torres called a professional engineer, Norman Wesler, as an expert witness. Wesler testified that the roadway was not constructed in accordance with good engineering practice in that the City had improperly laid approximately one inch of asphalt on the original cobblestone block roadway. This improper construction led to recurrent potholes as the asphalt was compressed and broken up by vehicular traffic, eventually exposing loose and displaced cobblestones, creating depressions in the roadway. According to Wesler, a motorist could easily lose control of his or her vehicle if a tire came into contact with a loose cobblestone. The proper practice, Wesler testified, would have been to remove all of the cobblestones and lay down 18 inches of "approved fill," covered with 4 inches of asphalt.

The City called Dorothy Rozier, an employee of the New York City Department of Transportation, who testified that the City had not received any written notice of a defect in the roadway at that location and that the roadway had last been repaired in 1991.

At the conclusion of the testimony, the City moved to dismiss the complaint on the ground that it had not received prior written notice of the roadway defect, as required by Administrative Code § 7-201 (c) (2) (the Pothole Law). The City further argued that the exception to the notice requirement for defects caused or created by the City did not apply here because the roadway defect at issue resulted from deterioration, as opposed to an affirmative act of negligence by the City. Counsel for Torres opposed the motion, arguing that the roadway was improperly constructed, leading to the recurrent potholes. The trial court reserved decision.

The City moved for a mistrial based on the alleged inflammatory and prejudicial remarks made by Garcia's counsel during his summation. The summation remarks were in response to certain questions asked of Torres on cross-examination by counsel for the City, who, for some unknown reason, suggested that Torres could easily have purchased cassettes in a "bodega" in his own neighborhood, instead of traveling by car to another location to shop. Garcia's counsel responded to this questioning during his summation, stating: "Let me just make one more comment about the City and its defense of this case. One of the very first questions to [Torres] was you went to buy a cassette tape? Yes. Don't you have bodegas where you can buy these tapes? Why on earth would [he] ask that question? I guess people in our communities are not allowed to shop and how dare they use a roadway to go buy something * * * . How dare he leave and not shop in the bodega for a tape? Why else would he talk about where he bought this tape from and mentioning bodegas if not to insult the character of someone who has the ability to just go buy something somewhere else * * * [T]hey want you to be trapped within these neighborhoods and not leave and not use the roadways * * * . It's a slap in the face."

At this point in the summation, counsel for the City objected, stating, "I object because I know counsel doesn't even live in the Bronx." The court sustained the objection and directed counsel for Garcia to "calm it down." Outside the jury's presence, the City moved for a mistrial. The court stated it was within "a hair" of declaring a mistrial, but ultimately permitted counsel to conclude their summations.

The jury found both the City and Torres liable in negligence for causing injury to Torres and Garcia. The jury apportioned liability 75% to the City and 25% to Torres. After the verdict, the City moved for judgment notwithstanding the verdict based upon the lack of prior written notice, and renewed its motion for a mistrial based upon the prejudicial summation.

In an oral decision dictated from the bench, the trial court granted the City's motion to dismiss based on the lack of prior written notice pursuant to the Pothole Law. The court further found that the exception for defects caused or created by the City's affirmative acts of negligence was inapplicable since "the defect was not caused by improper construction but by normal wear and tear," in that "the pavement was worn away exposing the cobblestone and a pothole." Additionally, the trial court granted the City's motion for a mistrial based upon Garcia's counsel's summation and ordered a new trial on plaintiff Garcia's complaint.

On appeal, plaintiff argues that the trial court erred in granting the City judgment as a matter of law on the ground of lack of written notice of the defect, since the notice requirement was obviated here by plaintiff's compelling showing that the City's improper construction of the roadway constituted an affirmative act of negligence. We agree.

Pursuant to Administrative Code § 7-201 (c) (2), no civil action may be maintained against the City for personal injuries caused by a street or roadway being out of repair, unsafe, dangerous or obstructed unless prior written notice of the defective condition is provided to the City.

The Court of Appeals has recognized only two exceptions to this type of statutory rule requiring prior written notice of roadway defects: where the locality created the defect or hazard through an affirmative act of negligence, or where a "special use" confers a special benefit upon the locality (*Amabile v City of Buffalo*, 93 NY2d 471, 474 [1999]; *see also Kiernan v Thompson*, 73 NY2d 840, 842 [1988]).

Applying the first of these exceptions, this Court has previously held that the notice requirement is inapplicable where the plaintiff produces evidence that the City affirmatively created a roadway defect by improper construction or repair of such roadway (*see Cruz v City of New York*, 218 AD2d 546, 547-548 [1995]; *Gonzalez v City of New York*, 268 AD2d 214, 215 [2000]). In *Cruz* (218 AD2d at 547-548), for instance, we held that the affidavit of plaintiff's engineer, which stated that the "rippled" roadway surface resulted from defective resurfacing without the use of expansion joints, raised a triable issue of fact as to whether the City caused or created a hazardous condition, and therefore notice was not required. Similarly, in *Gonzalez* (268 AD2d at 215), we affirmed the denial of the City's motion for summary judgment based on the lack of notice where the affidavits of plaintiff's experts raised a triable issue as to whether the City created the defective "drop off" of the

roadway by the affirmative act of resurfacing the roadway next to a deteriorating curb. In *Miller v City of New York* (225 AD2d 396 [1996], *lv denied* 90 NY2d 807 [1997]), we found that notice was not required where the trial evidence established that the City affirmatively created the hazard by failing to adequately secure the guardrail.

In this case, plaintiff presented the uncontradicted testimony of his expert that the roadway was improperly constructed by leaving the cobblestones in place and paving over them with only one inch of asphalt, and that such improper construction led to the recurrent potholes. As the City has not denied responsibility for the construction of the roadway and has offered no evidence to rebut the expert's convincing testimony of improper construction (*see Cruz*, 218 AD2d at 548), the trial court erred in its finding that the City did not create the defect by an affirmative act of negligence (*see Murphy v City of Corning*, 302 AD2d 1006 [2003]; *Smith v City of Syracuse*, 298 AD2d 842 [2002]; *Gormley v County of Nassau*, 150 AD2d 342 [1989]).

The trial court agreed with the City's position that the defect in this case was not affirmatively created, but rather resulted from deterioration over time. According to the City, the notice exception only applies where the City's construction or maintenance efforts create a roadway defect "that comes immediately into its dangerous existence," and that the defect must exist "at the completion of the municipal efforts."

Contrary to the City's argument, there is no requirement that a defect caused by the City's affirmative act of negligence must be immediately apparent in order to take the case out of the ambit of the Pothole Law. While defects resulting from passive negligence or nonfeasance are insufficient, by themselves, to come within the exception to the notice requirement (*see Monteleone v Village of Floral Park*, 74 NY2d 917, 918-919 [1989]; *Parella v Levin*, 111 AD2d 750, 750-751 [1985]), affirmative acts of negligence that cause a roadway defect will satisfy the exception even if natural deterioration plays a role in bringing that defect to light (*see Cruz*, 218 AD2d at 548 [without required expansion joints, seasonal temperature fluctuations and effects of heavy stop-and-go traffic resulted in rippled road surface]; *Gonzalez*, 268 AD2d at 215 [defect caused by defective resurfacing next to deteriorating curb]).

The cases upon which the City relies are distinguishable in that they involve mere nonfeasance, without any evidence of affirmative acts of negligence by the City (*see Bryant v City of Newburgh*, 193 AD2d 773, 774 [1993] [no issue of fact as to whether City caused defect where only conduct alleged is fail-

ure of City to repair a deteriorated condition]; *Caliendo v Spero*, 156 AD2d 532, 534 [1989], *lv denied* 75 NY2d 709 [1990] [no evidence that City caused tracks to extend above roadway where plaintiff's expert testified that asphalt settled below the tracks]; *Waring v City of Saratoga Springs*, 92 AD2d 1080 [1983] [mere fact that prior repairs to sidewalk had failed to permanently solve defect was not affirmative act of negligence by City]).

Accordingly, as the jury's conclusion that the City is liable for creating the roadway defect is rational and fully supported by the trial evidence (*see Cohen v Hallmark Cards*, 45 NY2d 493, 498-499 [1978]), the trial court erred in granting the City's motion for judgment as a matter of law.

We also find that the trial court improvidently exercised its discretion in granting the City's motion for a mistrial. Although some of Garcia's counsel's summation comments may have been inappropriate, we cannot ignore the fact that it was the inappropriate cross-examination of Torres by the City's counsel that injected these collateral issues into the case in the first place. Indeed, the City's failure to provide any rational explanation for its attorney's suggestion that the instant plaintiffs could have purchased cassettes in a "bodega" in their own neighborhood, instead of driving to Jerome Avenue, places the response of Garcia's counsel in its proper context.

The decision to grant or deny a mistrial rests within the sound discretion of the trial court (*see Chung v Shakur*, 273 AD2d 340 [2000]), and such drastic relief is generally warranted only where the misconduct by counsel has "permeated the trial and * * * effectively destroyed the [moving party's] ability to obtain a fair trial" (*DiMichel v South Buffalo Ry. Co.*, 80 NY2d 184, 198 [1992], *cert denied sub nom. Poole v Consolidated Rail Corp.*, 510 US 816 [1993]; *see also Rohring v City of Niagara Falls*, 192 AD2d 228, 230-231 [1993], *affd* 84 NY2d 60 [1994]; *Balsz v A & T Bus Co.*, 252 AD2d 458, 459 [1998]).

Clearly, it would have been better if Garcia's counsel had merely pointed out that plaintiffs' reasons for shopping outside of their neighborhood were irrelevant to the issues on trial. Nevertheless, because the challenged comments represented only a small portion of counsel's lengthy summation, the court sustained the objection by the City's counsel and the remarks were in response to inappropriate questioning by the City's counsel, we do not believe that the City was denied a fair trial (*see Balsz v A & T Bus Co.*, 252 AD2d at 459; *Rohring v City of Niagara Falls*, 192 AD2d at 230-231; *compare Nuccio v Chou*,

183 AD2d 511, 514-515 [1992], *lv dismissed* 81 NY2d 783 [1993]; *Caraballo v City of New York*, 86 AD2d 580, 581 [1982]). Moreover, that the jury did not apportion liability solely against the City, but instead found Torres 25% responsible, supports the conclusion that the jury was capable of evaluating the evidence and arguments in a fair and unbiased manner, notwithstanding the isolated improprieties on both sides. Concur—Buckley, P.J., Rosenberger, Lerner, Friedman and Gonzalez, JJ.