People v Garcia (2021 NY Slip Op 01571)





People v Garcia


2021 NY Slip Op 01571


Decided on March 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, WINSLOW, AND BANNISTER, JJ.


77 KA 16-00875

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RUBEN GARCIA, DEFENDANT-APPELLANT. 






MARK D. FUNK, CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (SCOTT MYLES OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered October 6, 2015. The judgment convicted defendant, upon a jury verdict, of rape in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of rape in the first degree (Penal Law § 130.35 [1]). The alleged crime occurred in April 2005, but defendant was not charged until February 2014. We now reverse.
Viewing the evidence independently and in light of the elements of the crime as charged to the jury (see generally People v Delamota, 18 NY3d 107, 116-117 [2011]; People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Although a contrary verdict would not have been unreasonable, we cannot say that the jury failed to give the evidence its proper weight (see People v Boyd, 175 AD3d 1030, 1031 [4th Dept 2019], lv denied 34 NY3d 1015 [2019]).
Contrary to defendant's further contention, Supreme Court properly denied his motion to dismiss the indictment on constitutional prompt-prosecution grounds (see generally People v Singer, 44 NY2d 241, 253-254 [1978]). Although the 8-year, 10-month interval between the alleged crime and the commencement of this action (see generally CPL 1.20 [1] [a]; [8]; [17]) was extraordinary and weighs in defendant's favor for purposes of the Singer analysis, less than two years of that period is attributable to governmental inaction, namely, the time between April 2011, when defendant's DNA sample was submitted to the CODIS database following an unrelated conviction, and March 2013, when the crime lab finally tested the complainant's rape kit and matched the sample to defendant's DNA. The People cannot be faulted for the first six years of delay because the complainant could not identify her alleged attacker and defendant's DNA was not in the database to compare against the rape kit. Nor, given the further investigation necessitated by the DNA hit in March 2013, can the People be faulted for the delay between that event and the filing of charges in February 2014 (see Singer, 44 NY2d at 254; see also People v Wiggins, 31 NY3d 1, 13 [2018]). Moreover, while defendant undoubtedly suffered some degree of prejudice from the delay—the true extent of which can never be fully ascertained—we are particularly persuaded by the fact that none of the prejudice is traceable to the period of governmental inaction between April 2011 and March 2013 (see People v Johnson, 100 AD3d 492, 492 [1st Dept 2012], lv denied 20 NY3d 1012 [2013]). Put differently, any prejudice that defendant suffered in this case would have attached well before April 2011, and he would have suffered no less prejudice had the crime lab expeditiously processed the complainant's rape kit and matched it to his DNA shortly after it became available. Thus, upon [*2]balancing all the factors identified in Singer, we cannot conclude that defendant's due process right to prompt prosecution was violated by the delay here (see People v Davis, 234 AD2d 88, 88 [1st Dept 1996], affd 90 NY2d 947 [1997]; People v Wentworth, 77 AD3d 519, 520 [1st Dept 2010], lv denied 16 NY3d 864 [2011]; People v Peralta, 267 AD2d 172, 173 [1st Dept 1999], lv denied 95 NY2d 869 [2000]).
We nevertheless reverse the judgment and grant a new trial because the court erred in denying defendant's request for a missing witness charge. At trial, the complainant testified that she promptly reported the alleged rape, first to her boyfriend and then, several hours later at a separate location, to her mother. The mother testified that her daughter reported the alleged rape to her. The People, however, declined to call the boyfriend to the stand. Defendant therefore sought a missing witness charge for the boyfriend; in opposition, the People argued that the boyfriend's testimony would be cumulative of the mother's and that the boyfriend was not within the People's control. Although the court explicitly rejected the People's control argument, it nevertheless denied defendant's request for a missing witness instruction on cumulativeness grounds. The latter determination was error.
In People v Smith (33 NY3d 454 [2019]), the Court of Appeals held that the proponent of a missing witness charge has no initial burden to show that the missing testimony would not be cumulative of the remaining testimony, and that the concept of cumulativeness in this context functions only as a tool for defeating an otherwise-meritorious request for a missing witness instruction (id. at 458-460). Thus, the Court of Appeals explained, the opponent of the missing witness instruction has the burden of showing that the missing testimony would be cumulative in order to defeat the requested instruction on that ground (id.).
Applying the standard set forth in Smith, we conclude that the People failed to show that the boyfriend's testimony would have been cumulative of the mother's testimony. The respective accounts would concern different outcries, separated by several hours and many blocks. The boyfriend could not have duplicated the mother's account of the complainant's outcry, because the boyfriend was not present during that particular event. Conversely, the mother could not have duplicated the boyfriend's account of the complainant's outcry, because the mother was not present during that particular event.
Moreover, treating the accounts as cumulative would be inconsistent with the prevailing definition of "cumulative" in this context. As Smith reiterated, testimony is cumulative when it would not have " 'contradicted or added to' " the existing testimony (id. at 461 [emphasis added], quoting People v Almodovar, 62 NY2d 126, 133 [1984]; see People v Gonzalez, 68 NY2d 424, 430 n 2 [1986]), and the People failed to establish that the boyfriend's testimony would not, at a minimum, have "added to" the mother's testimony. According to the complainant's testimony, she went directly from the site of the alleged rape to the boyfriend's house, where she immediately told him about the alleged rape. As such, under the complainant's version of events, she reported the alleged rape to her boyfriend before she reported it to her mother. The boyfriend's testimony thus would have been highly relevant to whether the complainant reported the alleged rape "at the first suitable opportunity" (People v McDaniel, 81 NY2d 10, 17 [1993] [emphasis added and internal quotation marks omitted]), which is the underlying purpose of prompt-outcry evidence (see id.). Put simply, the boyfriend's testimony would have "added to" the mother's testimony by shedding light on exactly when the complainant first reported the alleged rape, when she actually arrived at the boyfriend's house, whether she testified accurately about her actions at the boyfriend's home and the entire time period between leaving a particular party and returning to her mother's house many hours later, and whether—as the defense posited at trial—the complainant fabricated the attack upon arriving home late and intoxicated after having left her young child in the care of relatives.
Although Smith was an attempted murder case, the Court of Appeals' application of the cumulativeness standard to the facts in that case is markedly instructive here. In Smith, "due to inconsistencies in the victim's descriptions of the incident and what the shooter was wearing, the issue of identification was 'in sharp dispute . . . and the testimony of the [missing witness] might have made the difference,' " i.e., the missing witness "may have 'contradicted or added to' the victim's disputed identification testimony" (33 NY3d at 460-461). Similarly, due to the multiple inconsistencies and discrepancies in this case between the mother's testimony, the complainant's trial testimony about the alleged rape, and the complainant's account of the alleged rape to the [*3]investigating officer and a nurse back in 2005, the issue of forcible compulsion was in "sharp dispute" at trial (id. at 460 [internal quotation marks omitted]). Had he testified, the boyfriend—the first friendly person to encounter the complainant after the alleged rape—could have clarified the various inconsistencies and discrepancies concerning the timeline and precise events described by the complainant. Those inconsistencies and discrepancies were critically important in this case, since the element of forcible compulsion hinged exclusively on the jury's assessment of the complainant's credibility. Thus, the boyfriend's testimony—just like the testimony of the missing witness in Smith—" 'might have made the difference' " because he "may have 'contradicted or added to' the victim's disputed . . . testimony" about the details of the crime alleged (id. at 461). Under these circumstances, a missing witness instruction was required (see id.; People v Paulin, 70 NY2d 685, 686-687 [1987]).
The error is not harmless. Although the DNA evidence conclusively established the occurrence of sexual intercourse between defendant and the complainant, the element of forcible compulsion turned exclusively on the complainant's testimony and the jury's corresponding assessment of her credibility. Such evidence is not overwhelming (see e.g. People v Leonard, 29 NY3d 1, 8 [2017]; People v Holtslander, 189 AD3d 1701, 1704 [3d Dept 2020]; People v Stone, 133 AD3d 982, 984 [3d Dept 2015]; People v Wildrick, 83 AD3d 1455, 1457-1458 [4th Dept 2011], lv denied 17 NY3d 803 [2011]), and "[a]s a matter of first principle, 'unless the proof of the defendant's guilt . . . is overwhelming, there is no occasion for consideration of any doctrine of harmless error' " (People v J.L., 36 NY3d 112, 124 [2020], quoting People v Crimmins, 36 NY2d 230, 241 [1975]; see People v Mairena, 34 NY3d 473, 484 [2019]).
Contrary to the People's assertion, the improper denial of the requested missing witness charge "was not cured by permitting defense counsel to comment on the failure to call the witness in summation" (Nuccio v Chou, 183 AD2d 511, 514 [1st Dept 1992], lv dismissed 81 NY2d 783 [1993]; see DeVito v Feliciano, 22 NY3d 159, 165, 167 [2013]). The People's reliance on People v Barber (133 AD3d 868 [2d Dept 2015], lv denied 28 NY3d 926 [2016]) for the contrary proposition is unavailing because, unlike here, the defendant in Barber was not entitled to a missing witness charge at all (see id. at 870).
Finally, given the trial court's explicit rejection of the People's control argument, we are precluded from affirming on that ground (see People v Concepcion, 17 NY3d 192, 194-196 [2011]; People v LaFontaine, 92 NY2d 470, 473-475 [1998], rearg denied 93 NY2d 849 [1999]). Defendant's remaining contentions are academic in light of our determination.
Entered: March 19, 2021
Mark W. Bennett
Clerk of the Court